## EXPRESS COMPANY *v.* CALDWELL.

An agreement made by an express company, a common carrier in the habit of carrying small packages, that the company shall not be held liable for any loss of or damage to a package whatever, delivered to it, unless claim should be made therefor within ninety days from its delivery to the company, is an agreement which such company can rightfully make, the time required for transit between the place where the package is delivered to the company and that to which it is consigned not being long; in the present case a single day.

ERROR to the Circuit Court for the Western District of Tennessee.

Caldwell sued the Southern Express Company in the court below, as a common carrier, for its failure to deliver at New Orleans a package received by it on the 23d day of April, 1862, at Jackson, Tennessee; places the transit between which requires only about one day. The company pleaded that when the package was received " it was agreed between the company and the plaintiff, and made one of the express conditions upon which the package was received,

that the company should not be held liable for any loss of, or damage to, the package whatever, unless claim should be made therefor within ninety days from its delivery to it." The plea further averred that no claim was made upon the defendant, or upon any of its agents, until the year 1868, more than ninety days after the delivery of the package to the company, and not until the present suit was brought. To the plea thus made the plaintiff demurred generally, and the Circuit Court sustained the demurrer, giving judgment thereon against the company. Whether this judgment was correct was the question now to be passed on here.

*Mr. C. A. Seward, for the company, plaintiff in error*, citing several cases,* as analogous, and more or less bearing on the points, relied especially on *Weir* v. *The Adams Express Company*, an unreported case, A.D. 1864, precisely in point, in the old District Court for the City and County of Philadelphia, a court which, though of inferior rank in that its jurisdiction was local, was of high authority in view of its large and weighty concerns, and of the character of its judges, among whom were included at the time Justices Sharswood, Hare, and others, of wide reputation for judgment and learning in the law.

*Mr. S. R. Bond, contra*, sought to apply to the case the general principles laid down by this court, as to the high obligations of carriers and their inability to absolve themselves by contract from negligence, in *Railroad Company* v. *Lockwood*,† and relied especially, as more particularly applicable, on *The Southern Express Company* v. *Caperton*,‡ a case in the Supreme Court of Alabama, and on *The Southern Ex-*

---

* Riddlesbarger *v.* Hartford Insurance Company, 7 Wallace, 386 ; Wolf *v.* The Western Union Telegraph Company, 62 Pennsylvania State, 83 ; Young *v.* Same Defendant, 34 New York Superior Court, 390 ; and particularly to Lewis *v.* The Great Western Railway Company, in the English Exchequer, 5 Hurlstone & Norman, 867, where a clause similar to the one under consideration was sustained in a bill of lading.

† 17 Wallace, 357.                    ‡ 44 Alabama, 101.

*press Company* v. *Barnes*, in the Supreme Court of Georgia, and reported in 36 Georgia, page 532.

Mr. Justice STRONG delivered the opinion of the court.

Notwithstanding the great rigor with which courts of law have always enforced the obligations assumed by common carriers, and notwithstanding the reluctance with which modifications of that responsibility, imposed upon them by public policy, have been allowed, it is undoubtedly true that special contracts with their employers limiting their liability are recognized as valid, if in the judgment of the courts they are just and reasonable—if they are not in conflict with sound legal policy. The contract of a common carrier ordinarily is an assumption by him of the exact duty which the law affixes to the relation into which he enters when he undertakes to carry. That relation the law regards as substantially one of insurance against all loss or damage except such as results from what is denominated the act of God or of the public enemy. But the severe operation of such a rule in some cases has led to a relaxation of its stringency, when the consignor and the carrier agree to such a relaxation. All the modern authorities concur in holding that, to a certain extent, the extreme liability exacted by the common law originally may be limited by express contract. The difficulty is in determining to what extent, and here the authorities differ. Certainly it ought not to be admitted that a common carrier can be relieved from the full measure of that responsibility which ordinarily attends his occupation without a clear and express stipulation to that effect obtained by him from his employer. And even when such a stipulation has been obtained the court must be able to see that it is not unreasonable. Common carriers do not deal with their employers on equal terms. There is, in a very important sense, a necessity for their employment. In many cases they are corporations chartered for the promotion of the public convenience. They have possession of the railroads, canals, and means of transportation on the rivers. They can and they do carry at much cheaper rates

than those which private carriers must of necessity demand.
They have on all important routes supplanted private car-
riers.   In fact they are without competition, except as be-
tween themselves, and that they are thus is in most cases a
consequence of advantages obtained from the public.   It is,
therefore, just that they are not allowed to take advantage
of their powers, and of the necessities of the public to exact
exemptions from that measure of duty which public policy
demands.   But that which was public policy a hundred
years ago has undergone changes in the progress of material
and social civilization.   There is less danger than there was
of collusion with highwaymen.   Intelligence is more rapidly
diffused.   It is more easy to trace a consignment than it was.
It is more difficult to conceal a fraud.   And, what is of equal
importance, the business of common carriers has been im-
mensely increased and subdivided.   The carrier who re-
ceives goods is very often not the one who is expected to
deliver them to the ultimate consignees.   He is but one link
of a chain.   Thus his hazard is greatly increased.   His em-
ployers demand that he shall be held responsible, not merely
for his own acts and omissions, and those of his agents, but
for those of other carriers whom he necessarily employs for
completing the transit of the goods.   Hence, as we have
said, it is now the settled law that the responsibility of a
common carrier may be limited by an express agreement
made with his employer at the time of his accepting goods
for transportation, provided the limitation be such as the
law can recognize as reasonable and not inconsistent with
sound public policy.   This subject has been so fully consid-
ered of late in this court that it is needless to review the
authorities at large.   In *York Company* v. *The Central Rail-
road Company*,\* it is ruled that the common law liability of
a common carrier may be limited and qualified by special
contract with the owner, provided such special contract do
not attempt to cover losses by negligence or misconduct.
And in a still later case, *Railroad Company* v. *Lockwood*,†

---

\* 3 Wallace, 107.                    † 17 Id. 357.

where the decisions are extensively reviewed, the same doc-trine is asserted. The latter case, it is true, involved mainly an inquiry into the reasonableness of an exception stipu-lated for, but it unequivocally accepted the rule asserted in the first-mentioned case. The question, then, which is pre-sented to us by this record is, whether the stipulation as-serted in the defendant's plea is a reasonable one, not incon-sistent with sound public policy.

It may be remarked, in the first place, that the stipulation is not a conventional limitation of the right of the carrier's employer to sue. He is left at liberty to sue at any time within the period fixed by the statute of limitations. He is only required to make his claim within ninety days, in season to enable the carrier to ascertain what the facts are, and having made his claim, he may delay his suit.

It may also be remarked that the contract is not a stipu-lation for exemption from responsibility for the defendants' negligence, or for that of their servants. It is freely con-ceded that had it been such, it would have been against the policy of the law, and inoperative. Such was our opinion in *Railroad Company* v. *Lockwood.* A common carrier is always responsible for his negligence, no matter what his stipulations may be. But an agreement that in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor, or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with hold-ing the carrier to the fullest measure of good faith, of dili-gence, and of capacity, which the strictest rules of the com-mon law ever required. And it is intrinsically just, as applied to the present case. The defendants are an express company. We cannot close our eyes to the nature of their business. They carry small parcels, easily lost or mislaid, and not easily traced. They carry them in great numbers. Express companies are modern conveniences, and notori-ously they are very largely employed. They may carry, they often do carry hundreds, even thousands of packages

daily.    If one be lost, or alleged to be lost, the difficulty of tracing it is increased by the fact that so many are carried, and it becomes greater the longer the search is delayed. If a bailor may delay giving notice to them of a loss, or making a claim indefinitely, they may not be able to trace the parcels bailed, and to recover them, if accidentally mis-sent, or if they have in fact been properly delivered.    With the bailor the bailment is a single transaction, of which he has full knowledge; with the bailee, it is one of a multi-tude.    There is no hardship in requiring the bailor to give notice of the loss if any, or make a claim for compensation within a reasonable time after he has delivered the parcel to the carrier.    There is great hardship in requiring the car-rier to account for the parcel long after that time, when he has had no notice of any failure of duty on his part, and when the lapse of time has made it difficult, if not impossi-ble to ascertain the actual facts.    For these reasons such limitations have been held valid in similar contracts, even when they seem to be less reasonable than in the contracts of common carriers.

Policies of fire insurance, it is well known, usually con-tain stipulations that the insured shall give notice of a loss, and furnish proofs thereof within a brief period after the fire, and it is undoubted that if such notice and proofs have not been given in the time designated or have not been waived, the insurers are not liable.    Such conditions have always been considered reasonable, because they give the insurers an opportunity of inquiring into the circumstances and amount of the loss, at a time when inquiry may be of service.    And still more, conditions in policies of fire insur-ance that no action shall be brought for the recovery of a loss unless it shall be commenced within a specified time, less than the statutory period of limitations, are enforced, as not against any legal policy.*

Telegraph companies, though not common carriers, are

---

* See Riddlesbarger *v.* Hartford Insurance Company, 7 Wallace, 386, and the numerous cases therein cited.

engaged in a business that is in its nature almost, if not quite, as important to the public as is that of carriers. Like common carriers they cannot contract with their employers for exemption from liability for the consequences of their own negligence. But they may by such contracts, or by their rules and regulations brought to the knowledge of their employers, limit the measure of their responsibility to a reasonable extent. Whether their rules are reasonable or unreasonable must be determined with reference to public policy, precisely as in the case of a carrier. And in *Wolf* v. *The Western Union Telegraph Company*,* a case where one of the conditions of a telegraph company, printed in their blank forms, was that the company would not be liable for damages in any case where the claim was not presented in writing within sixty days after sending the message, it was ruled that the condition was binding on an employer of the company who sent his message on the printed form. The condition printed in the form was considered a reasonable one, and it was held that the employer must make claim according to the condition, before he could maintain an action. Exactly the same doctrine was asserted in *Young* v. *The Western Union Telegraph Company*.†

In *Lewis* v. *The Great Western Railway Company*,‡ which was an action against the company as common carriers, the court sustained as reasonable stipulations in a bill of lading, that "no claim for deficiency, damage, or detention would be allowed, unless made within three days after the delivery of the goods, nor for loss, unless made within seven days from the time they should have been delivered." Under the last clause of this condition the onus was imposed upon the shipper of ascertaining whether the goods had been delivered at the time they should have been, and in case they had not, of making his claim within seven days thereafter. In the case we have now in hand the agreement pleaded allowed ninety days from the delivery of the parcel to the

* 62 Pennsylvania State, 83.

† 34 New York Superior Court, 390.

‡ 5 Hurlstone & Norman, 867.

company, within which the claim might be made, and no claim was made until four years thereafter. Possibly such a condition might be regarded as unreasonable, if an insufficient time were allowed for the shipper to learn whether the carrier's contract had been performed. But that cannot be claimed here. The parcel was received at Jackson, Tennessee, for delivery at New Orleans. The transit required only about one day. We think, therefore, the limitation of the defendants' common-law liability to which the parties agreed, as averred in the plea, was a reasonable one, and that the plea set up a sufficient defence to the action.

We have been referred to one case which seems to intimate, and perhaps should be regarded as deciding that a stipulation somewhat like that pleaded here is insufficient to protect the carrier. It is the *Southern Express Company* v. *Caperton.** There the receipts for the goods contained a provision that there should be no liability for any loss unless the claim therefor should be made in writing, at the office of the company at Stevenson, within thirty days from the date of the receipt, in a statement to which the receipt should be annexed. The receipt was signed by the agent of the company alone. It will be observed that it was a much more onerous requirement of the shipper than that made in the present case, and more than was necessary to give notice of the loss to the carrier. The court, after remarking that a carrier cannot avoid his responsibility by any mere general notice, nor contract for exemption from liability for his negligence or that of his servants, added that he could not be allowed to make a statute of limitations so short as to be capable of becoming a means of fraud; that it was the duty of the " defendant to deliver the package to the consignee, and that it was more than unreasonable to allow it to appropriate the property of another by a failure to perform a duty, and that too under the protection of a writing signed only by its agent, the assent to which by the other party was only proven by his acceptance of the paper."

* 44 Alabama, 101.

This case is a very unsatisfactory one. It appears to have regarded the stipulation as a statute of limitations, which it clearly was not, and it leaves us in doubt whether the decision was not rested on the ground that there was no sufficient evidence of a contract. The case cited from 36 Georgia, 532, has no relation to the question before us. It has reference to the inquiry, what is sufficient proof of an agreement between the shipper and the carrier, an inquiry that does not arise in the present case, for the demurrer admits an express agreement.

Our conclusion, then, founded upon the analogous decisions of courts, as well as upon sound reason, is that the express agreement between the parties averred in the plea was a reasonable one, and hence that it was not against the policy of the law. It purported to relieve the defendants from no part of the obligations of a common carrier. They were bound to the same diligence, fidelity, and care as they would have been required to exercise if no such agreement had been made. All that the stipulation required was that the shipper, in case the package was lost or damaged, should assert his claim in season to enable the defendants to ascertain the facts; in other words, that he should assert it within ninety days. It follows that the Circuit Court erred in sustaining the plaintiff's demurrer to the plea.

JUDGMENT REVERSED, and the cause remanded for further proceedings,

IN CONFORMITY WITH THIS OPINION.