CALVIN WOOD v. SOUTHERN RAILWAY COMPANY.

*Case on Appeal—Certiorari—Limiting Carrier's Liability—Waiver of Conditions in a Contract—The Code, Section* 412 (2).

1. A case on appeal which states the usual formal parts and adds, " Here the clerk will copy the evidence," or " judge's notes," is sufficient, although it is a better practice to make out a case with more care, and to set out the evidence more fully than the judge's notes, taken in the hurry of a trial, usually do.

2. *The Code*, Sec. 412 (2) requires the judge, where there is an appeal, to file his notes of the evidence, or so much thereof as shall be necessary to present the exceptions of the appellant.

3. A case on appeal, after stating the formal parts, added, "Here the clerk will copy the *judge's notes.*" The copy of the case served on appellee changed this to " Here the clerk will copy the *evidence.*" This variance held immaterial.

4. Where a *certiorari* is moved for upon suggestion of a diminution of the record, and it sufficiently appears to the Court that the matter which would be certified in obedience to the writ is already substantially before the Court, the writ will be denied.

5. A common carrier may limit his liability as such by reasonable stipulations in a special contract made upon sufficient consideration. But, as such limitations are restrictions upon common-law rights, they are not favored by the law and must be reasonable to be valid.

6. A stipulation may be part of a contract but not a part of the obligation of the contract.

7. A condition precedent, in a contract of carriage or bill of lading, to the effect that a shipper must give *written* notice of any claim for damages, to the carrier's agent before removing the freight from place of destination, is waived by such agent's assurance to the shipper that he need not sue the carrier as he would be paid for the damages he claimed and of which he had given oral notice to such agent.

8. While a stipulation in a bill of lading, to the effect that a shipper shall give written notice of damages claimed before removing freight, is reasonable, and it is best that such stipulations should be always literally complied with, still the want of a literal compliance will not defeat the shipper's claim for damages in all cases, but the courts will look to see if, in the case before it, there has been a substantial compliance with, or waiver of, the stipulations, and whether the carrier has in fact been put to a disadvantage by the shipper's failure to strictly comply with the stipulation.

This was a CIVIL ACTION, brought by the plaintiff, Calvin Wood, against the defendants, the Southern Railway Company, for the recovery of damages for alleged injuries to certain live stock, viz.: eighty-seven head of yearling cattle while being transported in its care from Marion, N. C., to Culpepper, Va., tried before his Honor, *H. R. Bryan*, *Judge*, at Fall Term, 1895, of MITCHELL Superior Court.

The cattle were shipped under a special contract or bill

of lading, which, among other things, contained the following clauses:

" THAT WHEREAS, The Southern Railway Company and connecting lines transport live stock only at certain tariff rates, except when in consideration of a reduced rate the owner and shipper assume certain risks specified below: Now, in consideration of said railroads agreeing to transport the above described live stock at the reduced rate of $75 per car-load, 20,000 pounds, to Culpepper, Va., and a free passage to the owner or his agent on the train with the stock (if shipped in car-load quantities), the said owner and shipper does hereby assume and release the said railroad from all injuries, loss and damage or depreciation which the animal or animals, or either of them, may suffer in consequence of either of them being weak, or escaping, or injuring itself or themselves, or each other ; or in consequence of overloading, heat, suffocation, fright, viciousness, and from all other damages incidental to railroad transportation, which shall not have been caused by the fraud or gross negligence of the railroad companies."

"And it is further agreed that, as a condition precedent to the right of the owner and shipper to recover any damages for any loss or injury to said live stock, he will give notice in writing of his claim therefor to the agent of the railroad company actually delivering said stock to him, whether at the point of destination or at any intermediate point where the same may be actually delivered, before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same, and before said stock is intermingled with other stock."

The plaintiff was examined as a witness on his own behalf and testified that he shipped cattle by the defendant's railroad, about February 6, 1895, from Marion,

North Carolina, to Culpepper, Virginia.    They should have reached their destination within twenty-four hours from time of shipment.

That upon reaching Culpepper some of the cattle were dead from starvation, exposure and confinement, and the rest in bad condition.

When the cattle arrived at Culpepper the plaintiff gave oral notice to the defendant's agent, who was the person named in the bill of lading as the proper agent to be notified of a claim for damages.   This oral notice was given at the time the cattle were delivered to plaintiff by the defendant's agent.    At the time of the notice the defendant's agent told plaintiff not to sue defendant, and insisted that plaintiff could get his damages from defendant without a suit.

Plaintiff also testified as to the amount of damage or loss he sustained.

The plaintiff then offered in evidence the contract and bill of lading and bill of expenses and rested his case.

His Honor, *Judge Bryan*, intimated that the plaintiff was not entitled to recover upon his own showing, the proof failing to show that plaintiff had given notice in writing as provided in said contract.

The plaintiff insisted that the conduct and declarations of the defendant's agent at Culpepper to the effect " that the defendant company would pay the damages without suit against the company " relieved the plaintiff from the obligation resting upon him to serve the notice stipulated for in the contract.

The plaintiff further insisted that the evidence showed such gross negligence upon the part of the defendant that it could not by contract provide against it.

His Honor still intimating that the plaintiff could not

recover, the plaintiff submitted to a non-suit and appealed to the Supreme Court.

*Messrs. Battle & Mordecai*, for plaintiff (appellant).
*Messrs. G. F. Bason* and *A. B. Andrews, Jr.*, for defendants.

FURCHES, J. : There has not been that care in preparing this case on appeal that there should have been. And the first matter we are troubled with is an objection to the record and an application for a writ of *certiorari*. The case served on defendant was very short, consisting of that part of the case embraced in the first paragraph of the case, down to the words (" judges notes "). The copy prepared by appellant and served on appellee did not contain this expression, (" judge's notes ") but instead of this, contained this, " Here clerk will copy evidence."

The only evidence introduced was the written contract or bill of lading, and the testimony of the plaintiff, Calvin Wood. And the only means the clerk had of knowing what Calvin Wood's evidence was was the judge's notes, taken on the trial and filed with the clerk.

It was admitted by defendant, if plaintiff's case on appeal had said, " the clerk will copy the judge's notes of Calvin Wood's evidence," that would have been sufficient.

*The Code*, Section 412 (2), requires the judge, in case of appeal, to file his notes of the evidence, or so much thereof as shall be necessary to present the exception. And this being a submission to a non-suit, upon an intimation of the court that plaintiff was not entitled to recover, upon all the evidence, it was necessary that the court should file with the clerk all the notes of evidence taken before him, which it seems he did. It was not contended that the judge's notes were improperly or incorrectly copied,

if it was proper to copy them at all.   Nor was it
claimed there was any other evidence or notes of evi-
dence introduced on the trial, except what appeared in the
transcript of record, as made out and certified to this Court.
This being so, there was no purpose to be served by a
*certiorari*.   If it issued, there was nothing for it to bring
back, except what is already here.   So, the motion for a
*certiorari* is denied, and the question is, whether the case
as made out and served on defendant is sufficient to
authorize the clerk to copy the judge's notes of the evi-
dence, as a part of the case on appeal.   And we are of the
opinion it was.   There is no substantial difference, that
we can see, between saying " the clerk will here copy the
evidence of Calvin Wood," and saying that "here the clerk
will copy  the judge's notes of the evidence of Calvin
Wood," when the law had required these notes to be filed
for the benefit of the appellant, and there was no other
record of this evidence.   It is true, as we have said, it
would have been better if the case had been made out
with more care, and the evidence set out more fully than
the judge's notes, taken in the hurry of the trial, show it
to be.   And this neglect has probably produced, to some
extent, the trouble we have had in considering this appeal.
But be this as it may, we consider it our duty to treat
this evidence as a part of the case on appeal, and to
determine upon the record, as certified to us, whether the
plaintiff is entitled to a new trial or not.

This brings us to a consideration of the case upon its
merits.   And the only point really presented for our con-
sideration is as to whether what was said by the plaintiff
to the agent of the defendant at Culpepper, and what the
agent said to him in reply, was a sufficient compliance
with the requirements of the contract, as to notice of
plaintiff's claim, and a waiver of a strict compliance with

the requirements of the contract. The bill of lading—the contract—provides as a condition precedent that "he" (plaintiff) "will give notice in writing of his claim for damages to the agent of the railroad company actually delivering said stock to him_____before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same, and before said stock is intermingled with other stock." There was no notice *in writing*, served on the agent, of plaintiff's claim. But plaintiff testified that, "I told cattle agent at Culpepper I should have to sue the Company. He said I need not do that, and insisted that I could get my money without it." With this evidence the plaintiff closed his case, and the court "intimated that plaintiff was not entitled to recover upon his own showing, the proof failing to show that plaintiff had given the notice *in writing* as provided in said contract." The plaintiff further insisted "that the evidence showed such gross negligence upon the part of the defendant that it could not by contract provide against it." "His Honor still intimating that plaintiff could not recover, plaintiff submitted to a non-suit and appealed."

This presents the question for our consideration whether the notice the plaintiff gave the agent at Culpepper, and what the agent said to him in reply, relieved the plaintiff from that stipulation in the contract that the notice must be made *in writing* As it was not contended in this Court but what the evidence of the plaintiff, uncontradicted, and unexplained, made a case against the defendant of gross negligence, unless the defendant is protected from liability for this negligence by the failure of plaintiff to put his demand *in writing*, the plaintiff was entitled to recover "upon his own showing." And the court put

its ruling and judgment expressly upon this point—that the notice was *not in writing*.

A common carrier cannot relieve itself from liability for gross negligence by contracting that it shall not be liable for such negligence. Such contract would be against public policy and void. Lawson Contract of Carriers, 50, 51, and *Lee* v. *Railroad*, 72 N. C., 236. But such carrier may limit his liability by special contract, made upon a sufficient consideration. Lawson, *supra*. It is held to be a reasonable stipulation, in a contract for the transportation of cattle, to require a demand in writing for damages upon delivery at the place of destination, before the cattle are removed. *Selby* v. *Railroad*, 113 N. C., 588. It would be best that there should always be a literal compliance with this, and all such stipulations in contracts. But it is not always that the law will relieve a contracting party from liability because the other party has *not literally* complied with some stipulation in the contract, but will look for the reason of the stipulation to see whether t has been substantially complied with, or waived by other party, and whether the plaintiff is likely to be benefitted and the defendant damaged by reason of a failure, on the part of plaintiff literally to comply with the stipulation, and to give the notice in writing. Such stipulations, contained in a contract, are a part of the contract, but they do not contain any part of the obligation of the contract. They are conditions, in the nature of estoppels, and, when enforced, operate to prevent the enforcement of the obligations of the contracts. Such restrictions, when reasonable, will be sustained. But, as they are restrictions of common law rights and common-law obligations of common carriers, they are not favored by the law. Lawson, *supra*, 114, 115.

The object of such provisions in contracts like this is,

WOOD *v.* RAILWAY.

that the defendant may have notice of the shipper's claim for damage in time to investigate the matter before the cattle are carried off and scattered, so that it cannot do so, or cannot do so with the same facility and satisfaction that he could at the place of delivery. La*w*son, *supra*, 149. Verbal notice gives the defendant the same opportunity to make the necessary investigation that a written notice would. There is no statute requiring such contracts to be in writing. And the only benefit it can be to the defendant or the plaintiff to have it in writing is to more effectually preserve the evidence of the notice. But that reason does not exist here, as it is not denied that plaintiff gave the agent of defendant, at Culpepper, who was the person named in the contract as the party to be notified, verbal notice of his claim at the time of delivery of the cattle. And this agent told plaintiff not to sue the defendant, and insisted that plaintiff could get his money without suit. This seems to have been a waiver of the requirement that notice should be *in writing*. *Roberson* v. *Kirby* 7 Jones 477.

A party purchased a ticket from Wilmington, N. C., to Old Point, Va., and return, with a written condition that it should only be a good return ticket upon its being stamped by defendant's agent at Old Point. The purchaser did not go to Old Point, but presented the ticket to defendant's agent at Norfolk, explained the matter to him and he stamped it. In an action for damages by the holder of the ticket, alleging that defendant refused to receive this ticket in payment of fare, this Court held that the action of defendant's agent at Norfolk was a waiver of the stipulation that it should be done by the agent at Old Point. *Taylor* v. *Railroad*, 99 N. C., 185.

Where a policy of insurance provided that no other policy should be taken upon the property insured, without

notice to that company and its consent endorsed thereon, and made a violation of this stipulation a forfeiture of the policy, and the insured afterwards took out another policy with the knowledge and consent of defendant's agent, who procured the first policy to be taken, but without notifying the defendant and getting its consent *endorsed* as required by the first policy, this Court held that the action of the agent was a waiver of this requirement of notice to defendant and its endorsement. *Grubbs* v. *Ins. Co.*, 110 N. C., 108; or at least it was sufficient evidence of waiver to entitle the plaintiff to have the question submitted to the jury. *Ibid.; Hornthal* v. *Ins. Co.*, 88 N. C., 71; *McCraw* v. *Ins. Co.*, 78 N. C., 149.

A party shipped cattle under a written contract, with a stipulation that the shipper should not be entitled to damages unless he gave *written* notice to defendant's agent who delivered the cattle to plaintiff at or before the delivery. The cattle reached their destination late at night, when plaintiff notified the agent *verbally* that he would not receive them except under protest, and that he claimed damages, when the agent made no objection to the form of the demand, but assured him that it was not necessary to go to the company's office that night; from that time, he gave his attention to the stock, and with the agent's consent the stock was that night removed to plaintiff's farm, several miles in the country, and three days after he gave notice in writing. This was held to be a waiver of the requirement that the notice should be in writing. Lawson, *supra*, 150.

Therefore, upon reason and the authorities cited, we are of the opinion there is error, and that plaintiff is entitled to have the non-suit set aside, the case restored to the docket, and a new trial.          New Trial.