Argued June 7, decided June 27, 1911.

## SMITH MEAT CO. *v.* OREGON R. & N. CO.

[117 Pac. 303.]

PRINCIPAL AND AGENT—AUTHORITY OF AGENT—AUTHORITY TO BIND PRINCIPAL.

1. Where the agent of a meat company, buying and shipping cattle, entered into a contract with a railroad company for the shipment of cattle, the contract was binding upon the meat company.

CARRIERS—CARRIER OF LIVE STOCK—SPECIAL CONTRACT FOR TRANSPORTATION.

2. A stipulation in a special contract for the transportation of live stock that unless claims for loss, damage, or detention are presented within 10 days from the date of unloading and before the stock has been mingled with other stock, such claims shall be deemed waived and the carrier will be discharged, is reasonable, and the failure of the shipper to comply therewith precludes any recovery.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE MCBRIDE.

This is an action by Frank L. Smith Meat Company, a corporation, against the Oregon Railroad & Navigation Company. The facts as brought out at the trial in the court below, are as follows:

Plaintiff corporation is engaged in the butchering business in Portland, Oregon. The complaint alleges, in sub-

stance, that about March 14, 1908, plaintiff caused to be shipped to it, over defendant's railroad, from North Powder in Eastern Oregon, 53 head of live stock, intended for slaughter at Portland; that, owing to the negligent operation of defendant's train, the same arrived at Huron, Oregon, several hours later than it should have done; that a washout occurred at the latter point preventing the train from proceeding further; that, if the train had not been so negligently operated, it would have arrived at Huron and passed the place where the washout occurred without delay or detention on the route between North Powder and Portland; that the train and cars containing the cattle were returned by defendant to La Grande about 10 o'clock A. M. on March 15, 1908, when, without notice to or consent of plaintiff or the person in charge of the stock, they were unloaded into a yard entirely without shelter and covered with mud several inches deep, and kept there for three days without sufficient food and without any shelter or resting place; that the yard was an unfit and unsuitable place in which to keep the cattle, as defendant well knew; that defendant neglected and refused to provide any place other than the yard in which to keep them and refused to allow plaintiff or the person in charge to provide any other place for them; that because of the alleged wrongful acts of defendant the cattle became greatly reduced in weight and depreciated in market value, to plaintiff's damage in the sum of $522.12; and the plaintiff was obliged to pay $30.20 for extra feed for the cattle.

Defendant answered, admitting that the cattle were shipped to plaintiff on the date named, denying that plaintiff was the shipper, but alleging that the shipment received by them for plaintiff was the same shipment mentioned in the complaint. It denied all plaintiff's allegations of negligence, and admitted that the cattle were returned to La Grande about 9 o'clock A. M. of March 15th.

For a further and separate answer, defendant alleged that on March 14, 1908, a copartnership firm, doing business as Davis Bros., of which C. E. Davis was one of the members, entered into a contract in writing with defendant for the transportation of two car loads of cattle from North Powder to Portland by defendant; that the shipment of cattle, the exact number of which was unknown to defendant, was the same one mentioned in the complaint; that, in consideration of a rate of transportation granted by the defendant to the shipper, governing such shipment, the shipper and this defendant entered into a stipulation with respect to the conditions under which the shipment should be and was transported by this defendant. One provision of this contract is as follows:

"Unless claims for loss, damage or detention are presented within ten days from the date of the unloading of said stock at destination, and before said stock has been mingled with other stock, such claims shall be deemed to be waived, and the carriers and each thereof shall be discharged from liability. Any carrier liable on account of loss or damage to any of said stock, shall have the benefit of any insurance that may have been effected thereupon. The rules, regulations and conditions prescribed by the carriers for the transportation of live stock, as evidenced by their published tariffs, classifications and circulars in force and effect, are binding upon the shipper. The signing of this contract by the shipper or his agent shall be conclusive evidence of knowledge, assent and agreement to each and every stipulation and condition thereof by said shipper."

Defendant alleged that the shipment was transported by it without delay and with due care; but that on the evening of March 14th an extraordinary and furious shower arose which continued all of the next day, washing out a portion of defendant's track near Huron; that, upon encountering the washout, it returned to La Grande with the train; that the stock were promptly unloaded

into defendant's stockyard, with the consent of the shipper's agent; that the yard was entirely suitable for receiving and holding the stock under all conditions that could be reasonably anticipated by defendant; and that as soon as the injury to the road could be repaired defendant transported the cattle to Portland, where they were unloaded and accepted by plaintiff, without any complaint or objection, on March 19, 1908; and that no claim was made by plaintiff for damage to the stock until July 10, 1908.

The evidence does not show any unnecessary delay by defendant in transporting the shipment, but indicates that the delay was caused solely by the unusual storm and the consequent washing out of its roadway. There is some evidence tending to show that C. E. Davis, who was in charge of the stock for plaintiff, and who accompanied the shipment, left the cars when they returned to La Grande and was away when the stock were being unloaded; that the corral was muddy and unsheltered; that some of the slats on the feed racks were broken or absent, causing waste of food; and that when he ascertained this he demanded that the stock be taken back to North Powder where they could be better cared for; but that defendant's agent did not comply with this demand. Plaintiff received the stock in Portland and slaughtered them within a very short time, making no claim for damages until July 10, 1908. The evidence tends to show a shrinkage in the weight of the animals, amounting in all to about 5,500 pounds. The contract of shipment was signed "Davis Brothers," by C. E. Davis, and by defendant's agent at North Powder. C. E. Davis accompanied the shipment to Portland. At the conclusion of plaintiff's testimony the defendant moved for a judgment of nonsuit, which was granted, and plaintiff appeals.          AFFIRMED.

For appellant there was a brief and oral arguments by *Messrs. Cole & Cole.*

For respondent there was a brief over the names of *Mr. Schuyler C. Spencer* and *Mr. W. A. Robbins,* with an oral argument by *Mr. Spencer.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. The judgment of the circuit court is correct. The evidence shows, without contradiction, that Davis Bros. were plaintiff's agents in buying and shipping the cattle, and their contract was, therefore, its contract and binding upon it. *York Co.* v. *Central Railroad,* 3 Wall. 107 (18 L. Ed. 170).

2. The stipulation that a claim of injury shall be presented within 10 days and before the stock shipped shall have been mingled with other stock is a reasonable stipulation on its very face. Transportation companies can only do business through employees, and the location of these, as well as the time of their employment, is subject to change. It is only fair that, in cases of this character, the corporation should be seasonably notified that a claim for damages would be insisted upon, in order that a careful inspection of the animals and timely inquiry into the conditions attending their transportation may be investigated and the actual facts ascertained.

This is not a stipulation exempting the carrier from liability for negligence, but one giving it an opportunity to ascertain whether its servants have been, in fact, negligent. Such stipulations have been frequently upheld by the courts. *Atlantic Coast Line R. Co.* v. *Bryan,* 109 Va. 523 (65 S. E. 30) ; *Austin-Stephenson Co.* v. *Southern Ry. Co.,* 151 N. C. 137 (65 S. E. 757) ; *Anderson* v. *Lake Shore & M. S. Co.,* 26 Ind. App. 196 (59 N. E. 396) ; *Smith* v. *Railway,* 112 Mo. App. 610 (87 S. W. 9) ; *Wichita & W. R. Co.* v. *Koch,* 47 Kan. 753 (28 Pac. 1013) ; *Wood* v. *Southern Ry. Co.* 118 N. C. 1056 (24 S. E. 704) ; *Southern Ry. Co.* v. *Adams,* 115 Ga. 705 (42 S. E. 35).

In the case at bar Frank L. Smith, president of the plaintiff corporation, was personally present when the cattle were removed from the car and had ample opportunity to give the required notice and gives no sufficient reason for not doing so. For this reason the court below was justified in granting the nonsuit. This view renders it unnecessary to pass upon the remaining questions so ably presented by counsel.

The judgment is affirmed.                    AFFIRMED.