[No. 12263.   Department One.   April 5, 1915.]

JAMES HENRY, *Appellant*, v. CHICAGO, MILWAUKEE AND PUGET SOUND RAILWAY COMPANY, *Respondent*.[1]

CARRIERS—CARRIAGE OF LIVE STOCK—ACTIONS—LIMITATION OF LIABILITY.  A stipulation in a contract for the shipment of live stock, rendering claims for loss, injury or damage invalid unless presented in writing within thirty days after the same shall have occurred, is not a contract exempting the company from liability, within Rem. & Bal. Code, § 8648, providing that no contract or regulation shall exempt any corporation engaged in transporting live stock by railway from liability of a common carrier of live stock which would exist had no contract, etc., been entered into.

CARRIERS—CARRIAGE OF LIVE STOCK—ACTIONS—BURDEN OF PROOF.  A contract requiring claims for damages arising from the transportation of live stock by common carriers to be presented within thirty days fixes a condition precedent to right of recovery, and thus imposes the burden of proving the presentment of such claim on the party seeking damages under such a contract of carriage; hence nonsuit is proper, where plaintiff's evidence failed to show the presentation of such a claim, the contract being before the court at the time.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—SURPRISE.  A new trial on the ground of surprise and newly discovered evidence is properly denied, where the surprise consisted in rulings of the court in the progress of the trial inducing plaintiff to believe that the burden of proving thirty days' precedent notice of his claim was on defendant as a matter of defense, and plaintiff's newly discovered evidence of presenting his claim was insufficient, consisting of letters received long after expiration of the time limited.

COSTS—MILEAGE—WITNESSES.  The mileage and per diem fees for witnesses at the statutory rate are properly taxed as costs although they were employees of the prevailing party, and traveled free at such party's expense; especially where the loss of their employment, their maintenance, and expense in transportation would be no more than repaid by the allowance of those items.

[1]Reported in 147 Pac. 425.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 14, 1914, upon granting a nonsuit, dismissing an action of tort, after a trial before the court and a jury.    Affirmed.

*Ryan & Desmond*, for appellant.

*Geo. W. Korte*, for respondent.

PARKER, J.—The plaintiff commenced this action in the superior court for King county, seeking recovery of damages which he claims resulted from the negligence of the defendant in handling and caring for four shipments of live stock for him, materially impairing their value.    The cause proceeded to trial before the court and a jury, when, at the close of the evidence introduced in behalf of the plaintiff, counsel for the defendant moved for judgment upon the ground, among others, that there had been no evidence introduced showing that the plaintiff had presented to the defendant in writing his claim of alleged loss as required by the stipulations of the written contracts for the shipments.    The court granted the motion upon this ground and rendered judgment of dismissal accordingly.    From this disposition of the cause, the plaintiff has appealed.

Appellant is engaged in the wholesale meat and butcher business at Seattle.    He buys live stock throughout the northwestern states, shipping the same to his plant at Seattle.    Three of the shipments here involved were from points in Montana to Seattle, in this state.    One was from Castleton, in this state, to Seattle.    So three of them were interstate shipments and one was an intrastate shipment.    Appellant pleads four causes of action, claiming damages in connection with each shipment separately.    He does not in his complaint make any reference to any conditions contained in written contracts of shipment, proceeding in his complaint, evidently, upon the theory that there were no contracts of shipment other than such as would be implied from the mere fact of the shipments being made.    In its an-

swer, respondent denies the negligence charged against it, and also the alleged damage resulting to appellant, and as an affirmative defense, alleges the entering into written contracts for each of the shipments, each of which contracts contain, among other stipulations, the following:

"No claim for loss, injury or damage to said live stock, nor for delay or decline in the market, nor for injury to the owner or person in charge thereof, shall be valid unless presented to the company in writing within thirty days after the same shall have occurred;"

and further alleges that none of appellant's claims for damage were presented in writing in accordance with the terms of this stipulation of the contracts.

Appellant replied to this affirmative defense by a general denial only. This general denial was apparently made upon the theory that the stipulation in the contracts as to presentation of claims for damage is void under the law of this state, and therefore has no lawful existence as a part of the contracts, rather than that such stipulation was not in fact embodied in the contracts or that the contracts were not in writing. This theory seems apparent from subsequent events occurring during the trial.

Upon cross-examination of appellant's witnesses who had signed each of these written contracts for him, and as a part of their cross-examination, each written contract was introduced in evidence by counsel for respondent over the objection of counsel for appellant. This objection was made to the introduction of each written contract upon the ground, in substance, that the stipulation contained therein, requiring claims of damage to be presented to respondent in writing within thirty days after the same shall have occurred, is void under the law of this state. The written contracts were offered in evidence only for the purpose of showing this stipulation. Other stipulations in the contract are of no consequence here.

One of the shipments originated upon the line of the Oregon Short Line Railroad Company in Montana, and was transferred to respondent's line at Butte, Montana. The original contract entered into between the Oregon Short Line Railroad Company and the appellant contained a similar stipulation to that in the other contracts as to making claim of damage, which provision, however, did not require such claim to be made in writing. This was the contract pleaded in respondent's affirmative defense to appellant's third cause of action. Upon the transfer of that shipment to respondent's line at Butte, a new contract was entered into between respondent and appellant in exactly the same form, containing the same stipulation as to presentation of claim of damage as in the other contracts of shipment entered into between respondent and appellant. This contract between respondent and appellant, relating to the shipment involved in the appellant's third cause of action, was introduced upon cross-examination of appellant's witnesses who had signed the same for him, as all the other contracts were, and without any objection thereto other than that made to the introduction of the other contracts. This being true, we will treat the affirmative defense to appellant's third cause of action as amended to conform to this proof. Some contention is made by counsel for appellant in an attempt to confine respondent's defense to the third cause of action to the original contract of shipment entered into with the Oregon Short Line Railroad Company, in order to avoid the duty so far as that shipment is concerned of presenting any claim of damage in writing. This contention, however, we think is without merit in view of the facts we have noticed. We therefore proceed to a discussion of the case in the light of the fact that all four contracts entered into between appellant and respondent are exactly alike. Other facts will be noticed as may become necessary in our discussion of the several contentions made by counsel.

Counsel for appellant contend that the trial court erred in holding that the stipulation in the shipping contracts rendering claims of damage invalid as against respondent unless presented in writing within thirty days after the same shall have occurred is of binding force and effect upon him.   It is insisted that this stipulation of the contracts is void as being in contravention of the public policy of this state and, therefore, not enforcible in our courts, under the provisions of our public service commission law reading as follows:

"That no contract, receipt, rule, or regulation shall exempt any corporation engaged in transporting livestock by railway from liability of a common carrier, or carrier of livestock, which would exist had no contract, receipt, rule, or regulation been made or entered into."   Rem. & Bal. Code, § 8648.

In support of this contention, counsel principally rely upon our decision in *Carstens Packing Co. v. Southern Pacific Co.*, 58 Wash. 239, 108 Pac. 613, 27 L. R. A. (N. S.) 975, holding that, in the light of public policy as declared by this statute, a common carrier cannot by contract exempt itself from liability for loss or injury caused by its own negligence.   It is insisted that, while that was a stipulation attempting to specifically exempt the carrier from liability for loss caused by its own negligence, the stipulation here involved no less contravenes the public policy declared by our statute, in that it equally in terms limits the liability of respondent as a common carrier, although differing in terms as to the subject-matter of limited liability.

This court has not had occasion to consider the validity of a stipulation in a contract of this exact nature in the light of our statute above quoted.   We have, however, in the case of *Carstens Packing Co. v. Northern Pac. R. Co.*, 64 Wash. 256, 116 Pac. 625, had occasion to consider the validity of a stipulation in a shipping contract by which the shipper and the railway company agreed, at the time of making the

shipment, upon the value of each hog and sheep shipped. Such stipulation was there held to be binding upon the shipper as fixing the measure of his damage caused by loss of some of the hogs and sheep while in the hands of the railway company during the shipment, regardless of their real value and the actual damage resulting to the shipper from the loss. In that case the statute above quoted was held not to curtail the power of a carrier to so contract, and in so holding, Justice Mount, speaking for the court, said:

"This statute means that the common law liability cannot be avoided by contract. It is the duty of the carrier to safely transport the goods, and in case of loss from negligence or otherwise, the carrier is liable for their value, which duty may not be avoided. But the statute does not say, and we think does not mean to say, that the parties may not agree upon the value of the shipment before it is made. It simply means that the duty of the carrier to safely carry cannot be avoided by contract, and this is the public policy which the statute sought to declare. If the property is lost or injured, the carrier is liable for the injury or value of the property. But the parties are not, and were not at common law, prohibited from agreeing upon value, either before or after injury or loss has occurred."

Now since a stipulation of that nature may be lawfully made in a shipping contract, which may in a measure limit a shipper's recovery to an amount less than his actual damage to the property shipped, how can it other than logically follow that a stipulation may be lawfully made calling for the presentation of a claim in writing for damages by the shipper to the carrier within a limited time, reasonable in extent, which does not limit the amount of the carrier's liability? Such a stipulation, we think, does not *"exempt"* the railway company *"from liability of a common carrier, or carrier of live stock, which would exist had no contract, receipt, rule, or regulation been made or entered into,"* these italicized words being those of the statute. It was an agreement, we think, looking only to the manner of making and adjusting whatever claims of damage might arise.

In *Smith Meat Co. v. Oregon R. & Nav. Co.*, 59 Ore. 206, 117 Pac. 303, there was involved and considered the validity of a stipulation in a shipping contract reading as follows:

"Unless claims for loss, damage or detention are presented within ten days from the date of the unloading of said stock at destination, and before said stock has been mingled with other stock, such claims shall be deemed to be waived, and the carriers and each thereof shall be discharged from liability."

In upholding the validity and binding force of this stipulation, Justice McBride, speaking for the court, said:

"The stipulation that a claim of injury shall be presented within 10 days and before the stock shipped shall have been mingled with other stock is a reasonable stipulation on its very face. Transportation companies can only do business through employees, and the location of these, as well as the time of their employment, is subject to change. It is only fair that, in cases of this character, the corporation should be seasonably notified that a claim for damages would be insisted upon, in order that a careful inspection of the animals and timely inquiry into the conditions attending their transportation may be investigated and the actual facts ascertained.

"This is not a stipulation exempting the carrier from liability for negligence, but one giving it an opportunity to. ascertain whether its servants have been, in fact, negligent. Such stipulations have been frequently upheld by the courts."

In *Giles v. Atchison, T. & S. F. R. Co.*, 92 Kan. 322, 140 Pac. 875, Justice Porter, speaking for the court touching the validity of a stipulation in a shipping contract making the presentation of a claim for damage a "condition precedent" to the shipper's right of recovery, said:

"A stipulation in a contract of shipment of live stock, that as a condition precedent to his right to recover damages for loss or injury during transportation the shipper shall give notice of his claim before the stock is mingled with other stock, has been repeatedly held to be a reasonable stipulation. *Sprague v. Mo. Pac. Ry. Co.*, 34 Kan. 347, 8 Pac. 465;

*Railway Co. v. Kirkham*, 63 Kan. 255, 65 Pac. 261; *Railway Co. v. Wright*, 78 Kan. 94, 95 Pac. 1132; *Hayes v. Railway Co.*, 84 Kan. 1, 113 Pac. 421; *Ray v. Railway Co.*, 90 Kan. 244, 133 Pac. 847. A provision requiring such notice as a condition precedent to recovery is not a stipulation against the carrier's negligence. *Railway Co. v. Morris*, 65 Kan. 532, 70 Pac. 651. The Supreme Court of the United States, *Mo. Kan. & Tex. Ry. v. Harriman*, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, has upheld the same kind of a stipulation where the liability arose under the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593; U. S. Comp. St. Supp. 1911, p. 1307) on the ground that the liability which the Act of Congress imposes upon the carrier is only a continuation or extension of common-law liability."

These Oregon and Kansas decisions had reference to intrastate shipments, so that the conclusion reached therein did not present a Federal question and was not the result of any compelling influence of the decisions of the Federal courts under the so-called Carmack amendment to the interstate commerce act, except in so far as the decisions of the Federal courts were considered persuasive in support of the conclusion reached as a general proposition of law.

In *Southern Express Co. v. Caldwell*, 88 U. S. 264, a case decided before there was any Federal statute bearing upon the question, there was involved a stipulation in a shipping contract providing that the carrier should not be held liable for any loss or damage to the package shipped unless claim be made therefor within ninety days from its delivery to the express company. Considering the validity of this stipulation, notwithstanding the supreme court had theretofore committed itself to the doctrine that common carriers could not contract against liability resulting from their own negligence, Justice Strong, speaking for the court, said:

"It may be remarked, in the first place, that the stipulation is not a conventional limitation of the right of the carrier's employer to sue. He is left at liberty to sue at any time within the period fixed by the statute of limitations. He is

only required to make his claim within ninety days, in season to enable the carrier to ascertain what the facts are, and having made his claim, he may delay his suit.

"It may also be remarked that the contract is not a stipulation for exemption from responsibility for the defendant's negligence, or for that of their servants. It is freely conceded that had it been such, it would have been against the policy of the law, and inoperative. Such was our opinion in *Railroad Co. v. Lockwood,* 17 Wall. 357. A common carrier is always responsible for his negligence, no matter what his stipulations may be. But an agreement that in case of failure by the carrier to deliver the goods, a claim shall be made by the bailor, or by the consignee, within a specified period, if that period be a reasonable one, is altogether of a different character. It contravenes no public policy. It excuses no negligence. It is perfectly consistent with holding the carrier to the fullest measure of good faith, of diligence and of capacity, which the strictest rules of the common law ever required."

In *Atchison, T. & S. F. R. Co. v. Baldwin,* 53 Colo. 416, 128 Pac. 449, there was drawn in question the validity of a stipulation in a stock shipping contract, which provided that, as a "condition precedent" to the right to recover damages for loss or injury to the stock, the shippers should give notice in writing of their claim before such stock was removed from the place of destination and before being mingled with other stock, and that the failure to comply therewith should be a "complete bar to recovery for any and all such damage." In upholding the validity and binding force of this stipulation, Justice Gabbert, speaking for the court, said:

"Such stipulations, in brief, are upheld upon the theory that they are not opposed to public policy; that they are reasonable, and do not in any manner exempt the common carrier from negligence, but are conditions of recovery, and not exemptions from liability, which the carrier may lawfully include in its contract of shipment, for the purpose of protecting it against fictitious and unfounded claims for damages."

While that decision involved an interstate shipment and therefore a Federal question, it is apparent from the decision that the court reached its conclusion as a general proposition of law, without considering the problem as a Federal question. These views find support in *Southern Express Co. v. Hunnicutt*, 54 Miss. 566, 28 Am. Rep. 385, and *Gulf, Colorado & S. F. R. Co. v. Trawick*, 68 Tex. 314, 2 Am. St. 494. There are later Texas decisions which may seem out of harmony therewith, but when critically examined they will be found to rest upon a later statute of Texas which expressly prohibits railway companies from making any stipulation limiting the time for presentation of claims for damage at a less period than ninety days after the occurrence of the damage.

All of the above noticed decisions, other than our own, deal with the question entirely independent of statute. We notice them as lending support to the view that the stipulation in the contracts here involved is not a limitation upon respondent's liability to respond in damages, but is merely an agreement touching the manner of presenting claims of damage looking to a fair determination of the question of their justness.

In *Liquid Carbonic Co. v. Norfolk & W. R. Co.*, 107 Va. 323, 58 S. E. 569, 13 L. R. A. (N. S.) 753, the court had under consideration a stipulation in a shipping contract in substance the same as that here involved. At that time there was in force in Virginia a statute the same in terms as our own, except that the Virginia statute is applicable to all shipments, while ours relates only to live stock shipments. After a review of the question at some length, citing many authorities, the court arrived at the conclusion that the stipulation was a valid exercise of contracting power on the part of the railway company, notwithstanding the statute; and this manifestly upon the theory that such stipulation in the shipping contract did not purport to exempt the railway company from liability. It is of interest to note that this

decision was rendered in September, 1907, after the passage
of the Carmack amendment, and although it relates to an
interstate shipment, the conclusion was reached manifestly as
a general proposition of law and without regard to there
being a Federal question involved.

Turning now to the decisions of the Federal courts touch-
ing the effect of the Carmack amendment to the interstate
commerce act, which has been the subject of much discussion
in the Federal courts during the last few years, we first notice
the terms of that amendment so far as here involved, which
are as follows:

"That any common carrier, railroad or transportation
company receiving property for transportation from a point
in one state to a point in another state shall issue a receipt·
or bill of lading therefor and shall be liable to the lawful
holder thereof for any loss, damage or injury to such prop-
erty caused by it or by any common carrier, railroad, or
transportation company to which such property may be de-
livered, or over whose line or lines such property may pass,
and no contract, receipt, rule, or regulation shall exempt
such common carrier, railroad, or transportation company
from the liability hereby imposed." 34 Stat. 584, 595.

A comparison of this language with the provision of our
public service commission law here invoked by counsel for
appellant, we think renders it apparent that the Federal
statute goes as far in limiting the right of common carriers
to contract touching interstate shipments as our own law
does touching intrastate shipments. In other words, what-
ever may be lawfully contracted for under the Federal law
may be lawfully contracted for under our law. This fact
will render the decisions of the Federal courts upon the sub-
ject of material aid to us here, viewing them simply as
authorities upon the general problem, rather than as of com-
pelling force upon a Federal question.

In *Missouri, K. & T. R. Co. v. Harriman,* 227 U. S. 657,
the court considered the binding force and validity of a live

stock shipping contract wherein it was stipulated, among other things, that:

"No suit shall be brought against any carrier, and only against the carrier on whose line the injuries occur, after the lapse of 90 days from the happening thereof, any statute or limitation to the contrary notwithstanding."

In deciding that this was a lawful stipulation in the light of the provision of the Carmack amendment above quoted, Justice Lurton, speaking for the court, at page 671, said:

"It is conceded that there are statutes in Missouri, the state of the making of the contract, and the state in which the loss and damage occurred, and in Texas, the state of the forum, which declare contracts invalid which require the bringing of an action for a carrier's liability in less than the statutory period, and that this action, though started after the lapse of the time fixed by the contract was brought within the statutory period of both states.

"The liability sought to be enforced is the 'liability' of an interstate carrier for loss or damage under an interstate contract of shipment declared by the Carmack Amendment of the Hepburn Act of June 29, 1906. The validity of any stipulation in such a contract which involves the construction of the statute, and the validity of a limitation upon the liability thereby imposed is a Federal question to be determined under the general common law, and, as such, is withdrawn from the field of state law or legislation. *Adams Express Co. v. Croninger*, 226 U. S. 491; *Michigan Central Railroad v. Vreeland*, 227 U. S. 59. The liability imposed by the statute is the liability imposed by the common law upon a common carrier, and may be limited or qualified by special contract with the shipper, provided the limitation or qualification be just and reasonable, and does not exempt from loss or responsibility due to negligence. *Adams Express Co. v. Croninger*, and *Michigan Central Railroad v. Vreeland*, cited above; *York Co. v. Central Railroad Co.*, 3 Wall. 107; *Railroad Company v. Lockwood*, 17 Wall. 357; *Express Company v. Caldwell*, 21 Wall. 264, 267; *Hart v. Pennsylvania Railroad*, 112 U. S. 331.

"The policy of statutes of limitation is to encourage promptness in the bringing of actions, that the parties shall

not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents or failure of memory. But there is nothing in the policy or object of such statutes which forbids the parties to an agreement to provide a shorter period, provided the time is not unreasonably short. That is a question of law for the determination of the court. Such stipulations have been sustained in insurance policies. *Riddlesbarger v. Hartford Insurance Co.*, 7 Wall. 386.     A stipulation that an express company should not be held liable unless claim was made within ninety days after a loss was held good in *Express Company v. Caldwell*, 21 Wall. 264. Such limitations in bills of lading are very customary and have been upheld in a multitude of cases."

That decision is also authority in support of the view that a stipulation in a shipping contract, agreeing upon the value of the property shipped, and that such agreed value becomes the measure of the shipper's damage in case of loss or injury thereto, is lawful. This is also our conclusion reached in *Carstens Packing Co. v. Northern Pac. R. Co.*, *supra*, which we think is applicable here by analogy. The eighth and ninth Federal circuit courts of appeals in *Clegg v. St. Louis & S. F. R. Co.*, 203 Fed. 971, and *Kidwell v. Oregon Short Line R. Co.*, 208 Fed. 1, reached same conclusions as to the validity of a stipulation requiring claims for damages to be presented in writing within a specified time. It is of interest to note that the decision in the *Clegg* case was made within a month following the decision of the supreme court in the *Harriman* case, which decision in the *Harriman* case is not mentioned in the circuit court's opinion. It would seem that the circuit court reached its conclusion in harmony with, but independent of, the views of the supreme court. Even in the *Kidwell* case, decided a few months later, we do not find any citation of the supreme court's decision. It therefore seems probable that the circuit court reached its decision in that case in harmony with, yet independent of, the views of the supreme court.

We have noticed these Federal decisions simply as being persuasive in support of our conclusion that the stipulation

in each of these contracts here involved is valid and binding upon the appellant in the light both of our public service commission law and the interstate commerce law, regardless of the Federal questions involved. Of course, as to the three interstate shipments in connection with which damage is claimed, there is presented a Federal question; and as to those causes of action, we may observe that, in any event, we would be required to follow the Federal decisions rendered in the light of the Carmack amendment. But we prefer to place our decision of this question upon the broader ground of general legal principles, regardless of the Federal question involved. This renders it unnecessary for us to differentiate between the three interstate shipments and the one intrastate shipment. Upon this broad ground we conclude that the stipulation in the contracts is valid and binding upon the appellant, and that he must have complied therewith as a condition precedent to his right of recovery.

Contention is made by counsel for appellant that the trial court erred in granting a nonsuit, upon the theory that the burden of proof rested upon respondent both as to the existence of the written contracts containing the stipulation requiring the presenting of claims of damage in writing within thirty days after the same shall have occurred, and the fact that there was a failure to present such claim in writing within that time after the occurrence of the damage. This contention is rested upon the theory that these are both matters of defense only. It is true they were so pleaded and that no reference to the written contracts was made in appellant's complaint. Had there been no proof before the court of the existence of these written contracts when appellant rested his case, it might be well argued that respondent would not have been entitled to a nonsuit. As to the mere fact of the existence of these written contracts under which the shipments were made, it is now of no consequence where the burden of proof lay, since they were before the court without objection, except as to their validity, in such man-

ner as to render their existence conclusive against appellant, when appellant had rested his case and the nonsuit was granted against him.

There was no proof whatever offered tending to show that appellant had presented to respondent his claims of damage in writing within the time prescribed by the stipulation in the shipping contracts. As to where the burden of proof rests as to this particular fact is somewhat more difficult, and a question upon which the courts are seemingly not harmonious. However, when we remember that the stipulation in effect makes the presentation of such claims in writing within thirty days after the occurrence of damage a condition precedent to appellant's right of recovery, we think that the question must be resolved in respondent's favor by placing the burden of proof upon the appellant. This is not a mere limitation of time, but it imposes upon appellant a duty to be performed by him before he can recover, unless the right of respondent to have such duty performed be in some manner waived, as to which there is nothing to show in this record. In *The Westminster*, 127 Fed. 680, there was involved the libelling of the steamship City of Westminster, seeking recovery of damages for injuries to goods delivered to the ship for transportation. Disposing of the question of burden of proof, Judge Archibald, speaking for the circuit court of appeals, said:

"The libel was dismissed on the ground that no notice of claim was given by the consignees before the removal of the goods. This is in exact accord with the ruling of this court in the case of *The St. Hubert*, 107 Fed. 727, 46 C. C. A. 603, from which it cannot be distinguished. The bill of lading there, as here, provided that neither the shipowners nor their agents or servants should be liable 'for any claim notice of which is not given before the removal of the goods;' and it was held that without such notice there could be no recovery. The purpose of the provision, as there pointed out by Gray, J. is that the shipowners may know, not merely whether there is damage—for which no demand may ever be made—but whether any claim for damages is asserted by

the consignee, so that the necessary investigation can be made to ascertain the facts while they are fresh. The notice stipulated for is not of the fact of damage, more or less, but of the intent to hold the carrier liable for it, which, on failure to give notice, the latter, in view of the stipulation, may well regard as being waived.' . . .

"It is said, however, that there was no satisfactory evidence that notice had not been given, and that the rule with regard to the burden of proof was not properly applied. But the confusion, if any, grows out of supposing that want of notice was to be proved in the first instance by the respondent. The giving of notice was an affirmative fact peculiarly within the knowledge of the libelants, both with regard to the time when, and the agent or representative of the shipowners to whom, it was given; and the want of it having been set up in the answer—whether original or amended, does not matter—it was incumbent on the libelants to prove it, as a condition of the right to recover. 6 Cycl. Law & Proc. 506; *Metropolitan Trust Co. v. Toledo R. R.* (C. C.), 107 Fed. 628; *U. S. Express Co. v. Harris,* 51 Ind. 127; *Osterhoudt v. Southern Pacific Co.,* 47 App. Div. 146, 62 N. Y. S. 134. Even if the stipulation could be regarded as in the nature of a statute of limitations (*Westcott v. Fargo,* 61 N. Y. 542, 19 Am. Rep. 300; *Southern Express Co. v. Caperton,* 44 Ala. 101, 4 Am. Rep. 118), which it is declared in *Express Co. v. Caldwell,* 21 Wall. 264, 22 L. Ed. 556, that it is not, still, having been pleaded, and the libelants thereby notified that it would be relied upon, they were bound by every rule to show compliance, or that which would excuse it, or be barred."

This language is applicable here. The damage resulting to appellant was a fact particularly within his knowledge, not only when he received the stock at its destination in Seattle, but at other times and points along the line of transportation, since each shipment was accompanied by an agent of appellant. There would seem to be even more reason in the rule when applied to shipments of this nature than when applied to shipments of goods which are entirely within the care and control of the carrier. The question was similarly dealt with in *Kalina v. Union Pac. R. Co.,* 69

Kan. 172, 76 Pac. 438, where Judge Cunningham, speaking for the court, said:

"The clause in question is not one exempting the carrier from its common-law liability, or limiting that liability, but one imposing a condition upon the shipper which he must observe before he may recover for a breach of the carrier's duty; in other words, it is a condition of recovery, and not an exemption from liability. Hence, when the shipper seeks a recovery, he must show compliance with the condition upon which recovery may be had. That in this case the shippers did not, in their bill of particulars, count upon this contract, or that the carrier did not plead it in defense, can make no difference. As soon as the plaintiffs admitted that they were endeavoring to recover under this contract, they were required to show compliance with the conditions upon which such recovery could be had."

The decisions of the Federal court of appeals in *Clegg v. St. Louis & S. F. R. Co.*, 203 Fed. 971, and *Kidwell v. Oregon Short Line R. Co.*, 208 Fed. 1, are in harmony with this view. In the *Kidwell* case, the court referred to the stipulation as a "condition precedent" to the shipper's right of recovery. *Lindblom v. Mayar*, 81 Wash. 350, 142 Pac. 695. Another reason that lends support to this view is that not only is the fact of the claim having been presented in writing or not particularly within the appellant's knowledge, but it would ordinarily be an easier matter for him to prove that such claim had been presented than for respondent to prove the negative thereof, especially in view of the fact that this particular stipulation is not specific in naming the place at which, or the servant of respondent to whom, such written claim of damage shall be presented. We are of the opinion that the presentation of such claim within the time prescribed was a condition precedent to appellant's right of recovery, and the burden of proving that such claim had been presented rests upon him.

Our attention is directed by counsel for appellant to our remarks touching the claim for damages filed by the shipper in *Carstens Packing Co. v. Southern Pac. Co.*, 58 Wash. 239,

250, 108 Pac. 613, 27 L. R. A. (N. S.) 975, where we affirmed the lower court in admitting proof of an item of damage not specifically mentioned in the claim, which it is insisted are somewhat inconsistent with the requiring of appellant to present his claim in writing. It was, however, there pointed out that there was substantial compliance with the stipulation in the shipping contract in that regard, and the item of damage allowed to be proven was such as would naturally and probably result from the cause and general damage stated in the claim. This is not a question of substantial compliance with the stipulation. There was no compliance therewith.

One of appellant's grounds of new trial was surprise and newly discovered evidence. The alleged surprise consisted of rulings of the trial court made early in the progress of the trial, which counsel for appellant claims induced him to believe that the trial court was of the opinion that the burden of proving notice of appellant's damage and claim therefor to respondent was solely a matter of defense the burden of which rested upon respondent. There were some remarks of the trial court near the beginning of the trial which possibly thus indicated his opinion, and if the alleged newly discovered evidence would really avail appellant anything here, looking to a possible change in the result of the trial, there might be some substantial grounds for their contention in this regard if the evidence was in fact newly discovered. However, appellant's alleged newly discovered evidence consists simply of letters which are claimed to have been written by the manager of his business to respondent and received by respondent long after the time for presenting claims of damage under this stipulation of the contracts had expired. So even had this evidence been produced as a part of appellant's case upon the trial, it would have been unavailing to him. It would not have been proof of compliance with the shipping contracts. There were some statements in one of the affidavits offered in support of the motion

for new trial pointing to the fact that possibly one of these letters was written within the thirty-day period for the presentation of claims, but other affidavits presented in connection with the motion for new trial rendered it clear that none of the letters were received by respondent until long after the expiration of the thirty-day period. We are of the opinion that the denial of appellant's motion for new trial was not erroneous.

It is contended that the trial court erroneously denied appellant's motion to retax costs. It is insisted that the mileage and per diem of certain witnesses, claimed by respondent in its cost bill and allowed by the court, were excessive. This seems to be rested upon the theory that respondent should not be allowed these items computed at the statutory rates, because the witnesses were employees of respondent and were transported to the place of trial from without the state over appellant's line of railway free of expense to such witnesses. The mileage was claimed by respondent and allowed by the court from the state line only. We are unable to see any error in the allowance of these items as costs to respondent. The fact that the witnesses were employees of respondent and were transported to Seattle by respondent without expense to the witnesses, we think is not material, and even if it were, there were affidavits in respondent's behalf, presented to the trial court upon the hearing of the motion to retax costs, showing that the loss to respondent by having the witnesses away from their employment, their maintenance and the actual expense in their transportation, will be no more than repaid to respondent by the allowance to it of these items of cost. *Carlson Bros. & Co. v. Van de Vanter*, 19 Wash. 32, 52 Pac. 323; *Dolan v. Cain*, 59 Wash. 259, 109 Pac. 1009; *Hofstetter v. Sound Trustee Co.*, 67 Wash. 537, 122 Pac. 6.

The judgment is affirmed.

MORRIS, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.