SARGENT v. THE BOARD OF COUNTY COMMISSIONERS OF LA PLATA COUNTY.

1. CONSTITUTIONAL LAW—PRACTICE.
An objection that an act is unconstitutional, in that the manner of its passage prescribed by the constitution was not observed, cannot be made for the first time in this court.

2. SHERIFF'S FEES.
The sheriff is entitled to no *per diem* fee except for his attendance upon courts of record, and this must be turned into his fee fund.

3. SHERIFF'S SALARY.
The sheriff is entitled to a salary, but whether it is paid depends upon whether the fees charged and collected·by him will in amount be sufficient therefor.

4. SAME.
The compensation given a sheriff by statute for serving a special venire for jurors in a court of record is for the service, whether performed by him or by deputy.

5. SAME—EXPENSES.
Necessary traveling expenses paid by the sheriff in serving a venire for jurors in a court of record should be allowed by the county.

6. COSTS IN PRELIMINARY EXAMINATION.
The payment of costs in a preliminary examination before a justice of the peace rests in the discretion of the board of county commissioners, and their action is not reviewable by the court.

7. SHERIFF'S FEES—PER DIEM.
A sheriff is not entitled to a *per diem* fee for attendance before a justice of the peace in a criminal action.

8. BAILIFF'S COMPENSATION.
Bailiffs, attending upon a court of record, should be paid by the county.

9. MILEAGE—SHERIFFS' FEES.
In counties of the fourth class the sheriff is entitled for serving a mittimus to mileage of ten cents per mile in going to and returning from the place to which he takes a prisoner, and also to twenty cents per mile for the distance traveled while he has the prisoner in charge.

10. SHERIFF'S ACTUAL EXPENSES.
If a sheriff travels upon a railroad on a free pass, he cannot be allowed the amount of the ordinary railroad fare as expenses necessarily and actually incurred. But, notwithstanding he may have such a pass, he may pay the customary fare and include its amount in his expense account.

11. SAME—SHERIFF'S TRAVELING EXPENSES.
In addition to the fees prescribed in the fee act, the sheriff is entitled

to reimbursement for actual traveling expenses, provided they do not exceed the mileage specified in the salary act.

12. STATUTORY CONSTRUCTION.

Where two acts were approved on the same day, it will not be presumed, unless construction clearly requires it, that either is inconsistent with or repeals any portion of the other.

*Error of the County Court of La Plata County.*

THE sheriff and the board of county commissioners of La Plata county disagreed as to the amount of fees to which the sheriff was entitled, and this case, embracing such differences, was submitted to the county court upon an agreed statement of facts, accompanied by the proper affidavit of merit. It involves the construction of an act of the legislature concerning fees, which was approved on the 6th of April, 1891 (see Session Laws, p. 200), and a portion of the salary act approved on the same day (Session Laws 1891, p. 307).

There are seven causes of action set up in the complaint, each being for the recovery of fees alleged to have been earned by the plaintiff in error, plaintiff below, in his official capacity as sheriff of La Plata county. It is conceded that the sheriff performed the services in question. The only dispute is as to the amount of his compensation. Such additional facts as are necessary to an understanding of the case will be stated in the opinion, and it will tend to clearness briefly to state the different causes of action separately, and then consider the controverted items in one discussion.

### FIRST CAUSE.

1. For transporting prisoners from Durango to Cañon City, 350 miles, at 20c. per mile,    .    .    $70 00

2. For mileage in serving mittimus, from Durango to Cañon City and return, 700 miles, at 10c. per mile,    .    .    .    .    .    .    .    70 00

3. Railroad fare for prisoner from Durango to Cañon City,    .    .    .    .    .    .    .    19 10

4. Railroad fare for sheriff from Durango to Cañon City and return, .    .    .    .    .    38 20

5. Sleeping car fare for sheriff from Cañon City
to Durango,	.	.	.	.	.	.	.	3 50

Of this bill there were allowed and paid by the commissioners (which action was approved by the county court) all of the foregoing items, except the 4th, 5th, and one half of item No. 2.

### SECOND CAUSE.

1. Paid by sheriff to his deputy for serving a special venire for jurors in a court of record, in a criminal case,	.	.	.	.	.	.	.	$2 00

2. Paid for horse hire for deputy in serving said venire,	.	.	.	.	.	.	.	.	7 50

3. Paid for meals of deputy while serving venire,	70

The county commissioners allowed and paid to the sheriff the fees and mileage which the statute prescribed for serving such writs, but the three items set out above were disallowed; both of which rulings the county court affirmed.

### THIRD CAUSE.

1. For similar items to those embraced in the second cause of action,	.	.	.	.	.	$8 20

2. Mileage in transporting a prisoner 38 miles at 20c. per mile,	.	.	.	.	.	.	7 60

3. Mileage in serving a subpœna, 38 miles at 10c. per mile,	.	.	.	.	.	.	.	3 80

4. Mileage in serving warrant of arrest, 38 miles at 10c. per mile,	.	.	.	.	.	.	3 80

Items 3 and 4 were allowed; 1 and 2 were disallowed. In this case all of the fees which were allowed were ordered by the county commissioners, and so ordered by the county judge, to be turned over to the county treasury.

### FOURTH CAUSE.

The fees embraced in this bill were for services rendered by the sheriff at a preliminary examination before a justice of the peace, and were disallowed by the board and the court.

#### FIFTH CAUSE.

The fee claimed was for one day's attendance by the sheriff before a justice of the peace in a trial of a criminal action, and was disallowed by the board and the court.

#### SIXTH CAUSE.

For one day's services of a bailiff with a petit
jury in a court of record,    .    .    .    .    .    $3 00
This bill was allowed, but the amount ordered to be turned over by the sheriff to the county treasurer. The sheriff was charged therewith, and the amount was deducted from the amount to be paid the sheriff for his deputy's salary for the year 1893.

#### SEVENTH CAUSE.

For the same class of services as those embraced in the first cause, except that here the railroad fare for which the sheriff put in his bill was, as a matter of fact, paid by him, although at the time he had a free pass over the railroad. The board of commissioners disallowed this claim, but the court allowed it.

From the judgment against him on the whole case the sheriff is here upon a writ of error.

Messrs. RUSSELL & RITTER, Mr. W. A. REESE and Messrs. WELLS, TAYLOR & TAYLOR, for plaintiff in error.

Messrs. GALBREATH & SEARCY and Mr. ARTHUR CORNFORTH, for defendant in error.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The plaintiff in error for the first time urges in this court that the fee act is unconstitutional, in that the manner of its passage, prescribed by the constitution, was not observed by the legislature; but this point was not raised in the court below, nor is it preserved in the record or in the assignment

of errors. Under the decision of *Marean v. Stanley, ante,* p. 43, plaintiff in error cannot now be heard to make this objection. Hence the questions to be determined in this controversy involve merely the construction of section 4 of the fee act and section 11 of the salary act.

The provisions applicable to this case are as follows : From said section 4 : *First.* " Mileage for each mile actually and necessarily traveled, in serving each writ, subpœna or other process, in counties of the * * * fourth class, ten cents." *Second.* " For transporting prisoners, besides *actual expenses, necessarily incurred,* per mile, in counties of the * * * fourth class, twenty cents." From section 11 the following two excerpts : *Third.* " The sheriffs in the several counties in this state shall receive as their only compensation for their services rendered, an annual salary, to be paid quarterly out of the fees, commissions and emoluments of their respective offices, and not otherwise." *Fourth.* " In counties of all other classes (than those of the first class) he (the sheriff) shall be allowed actual traveling expenses which shall be paid out of and not exceeding a mileage at the rate of ten cents per mile, actually and necessarily traveled in the performance of duty."

It must be remembered that in the discharge of his official duties the sheriff gets no *per diem* except for his attendance upon courts of record when in session, and even this is to be accounted for by him and turned into his fee fund. He gets a salary, but whether or not that salary is paid depends upon whether the fees to be charged and collected by him will in amount be sufficient therefor. The fees which he is entitled to charge under the fee act are certain compensation by way of lump sums for the doing of the various things required of him, and mileage at a certain rate per mile necessarily traveled in the performance of such duties. There are many services performed by the sheriff for which, if the fee act alone is considered, he gets either no compensation at all, or a fee less in amount than the actual cost to the sheriff in the rendering of such service. A large part of a sheriff's official

duty consists in summoning jurors, serving process upon parties and subpœnas upon witnesses in civil and criminal cases. To do this, he must travel, frequently in counties where there are no railroads, and where the actual traveling expenses exceed the compensation which the fee act prescribes for such services. The fees for transporting prisoners and for certain other duties as prescribed in this act were doubtless based upon this fact known to the legislature, and while the compensation in a given case may seem disproportionately large to the service rendered in that case, yet, considering the fact to which we have just adverted, and the general nature and scope of the sheriff's official duties, the fees prescribed in this act, together with the provision for traveling expenses found in the salary act, may be considered as a fair way of equalizing his compensation.

Bearing these considerations in mind, we will proceed first to dispose of the controverted questions embraced in causes of action Nos. 2, 4, 5, and 6.

1. Under the second cause of action, the sheriff was paid by the county the fee and mileage prescribed by the fee act for serving a venire for jurors. A deputy sheriff served the writ. The compensation prescribed is given for the service, whether performed by the sheriff or his deputy; and out of such fees the sheriff must, if the writ is served by his deputy, compensate the latter. The first item was properly disallowed. The second and third items, if they were necessary parts of the traveling expenses paid, should have been allowed, but the facts given are too indefinite to enable us to pass upon this question.

2. Services such as were rendered and described under the fourth cause of action relate to a preliminary examination before a justice of the peace, and the costs thereof are to be paid or not by the county commissioners, in their discretion, and we are not at liberty to review the same. Mills' An. Stats., sec. 699; Session Laws (1889), p. 100; *Board of Commissioners v. Graham*, 4 Colo. 201.

3. The fee claimed by the sheriff as stated in the fifth

cause of action was for one day's attendance by him before a justice of the peace in the trial of a criminal action. While a constable is allowed a *per diem* for his attendance at a trial before a justice of the peace, we find no statutory authority for giving to the sheriff any such compensation. He is allowed his *per diem* for attendance before a court of record, but not before a justice of the peace.

4. As to the sixth cause of action, it appears that at the trial of a criminal action in a court of record a bailiff was appointed to attend the jury in its deliberations. Three dollars were allowed by the board of commissioners as a *per diem* for such services; but this amount was ordered by the board to be covered into the county treasury, and the same was to be deducted from the amount to be paid to the sheriff for his deputy's salary for the year 1893. The county court, however, ruled otherwise, and held that the sheriff was not to be charged therewith. The construction put upon this by the commissioners necessarily makes of the bailiff a deputy sheriff, and puts him on a salary. Such is not a fair interpretation. The bailiff frequently, as a matter of fact, is not a deputy sheriff. No salary is provided for him by the statute, and only a *per diem* is allowed, and this only while he serves as a bailiff. Even if the bailiff was a deputy sheriff, it was not proper to order this money handed over to the treasurer. *Board of Commissioners v. Bransom*, 4 Colo. App. 274; *Henderson v. Board of Commissioners*, 4 Colo. App. 301.

Indeed, we are cited to no statute that authorizes the sheriff to appoint a bailiff for a court of record. We know that the practice in some of the district and county courts is for the court at the beginning of the term to make an order authorizing the sheriff to appoint necessary bailiffs for the term. But, however appointed, or what may be the character of his office, the services of the bailiff are necessary for the orderly and proper conduct of the business of the court, and the expenses incurred thereby should be paid by the county as part of the expenses of the court, the same as expenses incurred by the employment of a janitor to care for the court room.

5. The items embraced in the first, third and seventh causes of action may be disposed of together. It will be observed from the foregoing statement of facts that the court allowed to the sheriff as one item the sum of $35.00 for mileage for returning from Cañon City to Durango. This allowance must have been based upon the provision of the statute first above quoted. Our construction of these provisions is that the fee to the sheriff of twenty cents per mile, mentioned in the second quotation, is compensation, not for serving the mittimus, and based upon the mileage actually traveled in serving the writ, but it is for the labor and time, the care, the risk, and the danger incurred in transporting prisoners, although the amount thereof is determined by the number of miles traveled while the sheriff has the prisoner or prisoners in charge.

This seems to us clear from the fact that no such fee, upon the basis of twenty cents per mile traveled, is given to the sheriff upon his return trip to his home from the place where the prisoner is left. The court below evidently so held, because it awarded to the sheriff the compensation for his return journey, not upon the basis of twenty cents per mile, but upon the basis of ten cents, for each mile traveled. This latter allowance, however, could be made only under the clause of section 4, which is first set out above, and which is given to the sheriff as a compensation for serving the warrant or mittimus, and the amount thereof is, by the statute, to be determined by the number of miles actually traveled in serving it. In serving the writ the sheriff must travel both to the place where it is served and back to his home, and so the mileage under the first provision quoted, which is compensation for serving the writ, is to be reckoned upon the aggregate number of miles traveled both coming and going.

Another item in dispute is the sum of $38.20 for the sheriff's railroad fare going from Durango to Cañon City, and returning therefrom. The facts were that the sheriff had a free pass over the railroad, and did not pay to the railroad company the amount which he presented in his bill; but he

contends that this amount (which is admittedly the correct railroad fare) comes within the meaning of the phrase "actual expenses, necessarily incurred." On the other hand, the county contends that, inasmuch as this amount was not actually paid or liability therefor incurred by the sheriff, it cannot come within this provision. We are cited to no authority upon this point.

The question of charging for railroad fare under such circumstances may, in one view, be regarded as a question of ethics rather than of law, and so, possibly, in this regard, beyond the pale of this court's jurisdiction. Yet it is in a very important sense strictly a legal question, and one which we must determine.

It will be observed that this claim is predicated by the sheriff upon the second provision cited. The language is "actual expenses necessarily incurred." This implies that such expenses, if not actually paid, at least that the liability therefor has been incurred by the sheriff before he can collect the same from the county. This particular language of the statute is not so elastic as to include as part of the actual expenses of the officer a claim for railroad fare which the sheriff has neither paid nor obligated himself to pay, although, had he not made use of his free pass, such outlay would have been necessary. Nor can it be said upon this case as made that such railroad fare not paid comes within the clause "actual traveling expenses," found in the fourth quotation. The case before us is that the sheriff rode upon a *free* pass, and this implies that no money consideration therefor was paid, and no actual equivalent of any other sort given for the pass. So we conclude that where a sheriff travels upon a free pass he may not in his account charge and receive credit from the county for the amount of the railroad fare which he would have been obliged to pay had he not traveled upon a free pass. The only real difficulty is not so much to determine the meaning of either of these phrases alone, but rather what meaning shall be given to the provisions for mileage found in both.

It is clear, however, that under this fourth clause the sheriff must be compensated for his actual traveling expenses. But out of what mileage these traveling expenses are to be paid is rendered somewhat uncertain by the use of the word "mileage" contained in separate acts apparently bearing upon the same subject.

Are there, by these provisions in two separate acts, intended two mileages for the sheriff,—one in section 4 of the fee act, which, together with the lump sum prescribed, is to be his compensation for serving the particular writ, and in addition thereto a separate mileage fee out of which are to be paid his actual traveling expenses; or is the "mileage" specified in the two acts one and the same mileage, and limited in counties of the fourth class to ten cents per mile?

These acts were approved upon the same day. It must not be presumed, unless the construction clearly requires it, that either is inconsistent with, or repeals any portion of, the other. While these two acts throughout do not maintain the distinction which the legislature apparently had in view of separating the general subject of compensation of public officers into the subordinate subjects of fees and salaries, yet, in the main, the one relates to fees, the other to salaries. The former prescribes what charges the officers may make, and what fees they may collect, out of which their salaries are to be realized; the latter fixes the salary and the maximum of the total remuneration.

If there is only one mileage allowed to the sheriff under these two provisions, then, whenever in performing his duty he is obliged to travel, he must, from such mileage fee, if it is ample enough, first deduct the costs of travel, and only the balance is the compensation for his services. If the costs of travel exceed the one mileage fee, then he may not only not get anything for his services, but be entirely out of the money paid for traveling expenses.

If there are two mileages contemplated, then when the officer travels he gets the one mileage prescribed in the fee act, which, together with the lump sum therein prescribed,

is his total compensation for serving the writ; and out of the mileage prescribed in the salary act he gets an additional amount, equal to the costs of his travel, but limited in counties of the class we are considering to ten cents per mile. If such traveling expenses are less than such mileage at the rate of ten cents per mile, the officer does not get the full mileage, but only his actual outlay; if greater, only the amount of the mileage is paid.

The traveling expenses paid by the sheriff, when refunded to him by the county, simply make the sheriff whole for what he has been obliged to pay out; and it should not come out of that mileage which, by the fee act, is intended merely as part of the compensation which the county, in the eye of the law, has agreed to pay him for what his services are supposed to be actually worth. The evident intent of the legislature was to create by the fee act a mileage fee, all of which belongs to the officer as part of his compensation for services actually rendered, and no part of which should be applied to the officer's necessary traveling expenses. By the salary act another mileage fee was provided for, separate and distinct from that in the fee act, out of which the officer was to be repaid his actual traveling expenses, and no more.

The salary act was intended to provide a compensation to public officers, and among them to a sheriff, for the performance of official duties. Such compensation, however, must be paid out of the fees prescribed, and out of them only. The amount of the salary is therein fixed. The act, moreover, goes further than this, and provides that in addition to his salary the actual traveling expenses of the sheriff shall be paid, providing they do not exceed what is called a mileage at the rate of ten cents per mile in counties of the fourth class.

Whatever the practical operation of the act may be, we must not presume that the legislature intended to require public officers to do work for the public the performance of which will compel them to give not only their time, without getting any compensation therefor, but also require them to expend their money in accomplishing it. But if the actual traveling

expenses are to be deducted from, and come out of, the mileage fee, which is prescribed as a compensation to the officer for his services, we have the result that the fund created by the collection of the fees prescribed, and out of which the salary must be paid, is to be reduced before paying the salary by the application of a portion thereof to the payment of traveling expenses incurred by the officer, and which the legislature evidently intended the latter should have in addition to, and over and above the amount of, the fixed salary ; and we have also the result that, instead of the officer receiving his salary and this additional compensation, whenever the fees collected are less than the traveling expenses,—which sometimes may occur,—the officer gets neither his traveling expenses nor anything to apply upon the salary.

It is important always to bear in mind that it is out of the fees, and the fees only, that the salary is to be paid. It must have been intended by the two acts to fix the fees so that they would probably amount to the salary and traveling expenses ; or, in other words, full compensation to the public official, and nothing more. Whenever the total amount of fees from all sources is greater than the salary and the traveling expenses, the question we are now discussing is unimportant ; but when the amount of fees is less than the salary, or less than the salary and the traveling expenses, it becomes material to the officer to know whether there are two mileage fees provided or only one.

We conclude that the mileage fee prescribed for the sheriff in section 4 of the fee act for serving any process is intended solely as à part of the compensation for such services, all of which is to be applied to the payment of his salary, and that the actual traveling expenses of the sheriff provided for in section 11 of the salary act are to be paid out of and not exceeding a mileage fee at the rate of ten cents per mile actually and necessarily traveled in the performance of his duty, which fee is separate and distinct from and in addition to that prescribed in the fee act. This seems to us the only permissible construction.

If such traveling expenses are provided for in the fee act, then there was no necessity for this part of the salary. act, and the legislature, had it not intended to provide a separate, distinct and additional fund out of which the traveling expenses of the officer were to be paid, could easily have added in the salary act that the mileage fee intended as the one out of which such expenses were to be paid was one of the mileage fees provided in the fee act; but no such reference is found, and we must give effect to all the language of the act, if it can be reasonably done.    A mileage fee is created in the salary act, and as it is not limited to any mileage found in the fee act, either the mileage allowed for serving process or mileage for transporting prisoners, we conclude that it was in addition thereto, and is limited to the payment of actual traveling expenses.

By sustaining the validity of the salary act, as we have done in another case, the compensation of the sheriff for his services cannot, in any event, exceed the amount fixed by this act; and whatever fees are collected, which, in amount, exceed the salary and traveling expenses, belong to and become the property of the county, and so no excessive compensation can be received under these two acts, nor can any burdensome claim be imposed upon the county, or extortionate charge exacted of litigants that will go into the pockets of public officials.    It must also be borne in mind that these mileage fees, if earned by the officer, must be collected by him of litigants if in civil cases, and that the various statutory conditions that make the county liable for costs in criminal cases must have happened before the sheriff gets credit from the county therefor; so that, in compensating the sheriff, he is not only limited to his salary and actual traveling expenses, but to get these he must first have collected from the parties to suits the various items of fees which go to make up, and out of which only, his compensation is paid.

In the seventh cause of action the sheriff transported a prisoner from Durango to the state reformatory at Buena Vista, and as part of the actual expenses necessarily incurred

by him is an item of $37.90, which he actually paid for railroad fare in going to and returning from Buena Vista. At the time he had in his possession a free railroad pass, but did not use it. The board of county commissioners refused to allow this item on the ground that inasmuch as the sheriff had a free pass which he might have used in making this journey, but did not, he should not be allowed, as traveling expenses, the railroad fare paid by him. This ruling is a sort of moral compulsion by the county to influence the sheriff to make use of what some people regard as a questionable practice upon the part of a public officer. We do not consider such a construction of the law to be warranted; and hold that the proper railroad fare should be paid by the county when it has been paid by the sheriff.

Item No. 2 in the third cause of action is for transporting a prisoner by the sheriff, whom the latter arrested and conveyed from the place of arrest to the court before trial was had. As we understand the contention of the county, it is that any fee for transporting a prisoner cannot be allowed, unless the prisoner has been convicted and then taken to the penitentiary. Such contention, however, we do not consider to be sustained by giving any such restrictive meaning to the word "transporting." The fee is for the necessary "conveying" of a prisoner, either before or after conviction, and the bill should have been allowed if all other statutory conditions of the liability of the county were present.

In item No. 5 in the first cause of action the sheriff put in a claim for $3.50, which he paid as sleeping car fare from Cañon City to Durango upon his return trip from conveying a prisoner to the state penitentiary. The county claims that this is not a necessary expense; the sheriff claims that it is.

In construing the word "necessary" or "necessities," courts have held that whatever is convenient, usual, or adapted to the end, proper or customary under similar circumstances, may come within the definition of such expressions. *Madison et al. v. Watertown*, 5 Wis. 173; *United States v. Harmon*, 147 U. S. 268. In these days of modern

travel, sleeping cars are not absolute necessities, though they certainly are convenient and customary, and are frequently used by those who travel long distances. We are advised by the facts of this case, as well as by our own knowledge, that the distance from Durango to Cañon City is 350 miles, and by the route usually traveled is a tiresome and wearisome journey over two mountain ranges. In going from Durango to Cañon City, when the officer has a prisoner in charge, he must be constantly on the watch to see that the prisoner does not escape ; and we think that, taking into consideration these circumstances, the use by him upon his return journey of a sleeping car during the night time is not only customary, but is proper and convenient, and reasonable, within the meaning of the statute, as a legitimate part of the necessary expenses incurred by the sheriff. We must not be understood as holding that the sheriff who transports prisoners to the penitentiary may make use of the most luxurious accommodations at his disposal, nor must it be inferred from the foregoing that for every short and ordinary trip upon such business the sheriff may avail himself of the use of a sleeping car, and include it in his actual expenses and collect the same from the county. The liability of the county depends in part upon the facts and circumstances of each case, and the decision of this particular question must be limited to the facts of this case.

The foregoing considerations dispose of all of the controverted items in this case, and all other matters which are raised here and relate to this controversy have been settled by us in the case of *Airy v. The People*, decided at this term (*ante*, p. 144). We have not, upon our own judgment, fixed the fees or prescribed what compensation public officers should have for their services, but have simply declared what determination the legislature, in its wisdom, has reached upon these questions as expressed in these two acts.

We have proceeded in our discussion upon the assumption that all of the statutory conditions which fix the liability of the county exist. If the case is a civil one, that the officer

has collected the prescribed fees and turned the money above the amount of the salary into the county treasury. If criminal, that the facts exist which must be present in order to call for payment by the county of the costs incurred. *Bransom v. Board of Commissioners of Larimer County*, 5 Colo. App. 231. The statement of facts is not sufficiently definite as to these precedent conditions to enable us to enter judgment here upon all the claims presented ; but from the foregoing opinion it follows that the judgment of the county court must be reversed and the cause remanded with instructions to the court to proceed in accordance with the views expressed in this opinion.

*Reversed.*