## BAIRD v. DENVER & R. G. R. CO.

No. 2915. Decided December 6, 1916 (162 Pac. 79).

1. CARRIERS—LIVE STOCK—VALUATION. A provision, in a contract for the shipment of live stock in consideration of a reduced rate, that in the event of damage for which the carrier might be liable claim should not be made for any amount in excess of the actual value of the animals damaged at the time and place of shipment, nor in any event in excess of three dollars per head, did not estop a shipper who realized more than three dollars per head for all his sheep and lambs involved in the case from recovering on a claim for damages less than that valuation. (Page 64.)

2. CARRIERS—LIVE STOCK—CLAIM FOR DAMAGES—SUFFICIENCY. A written claim for damages to a shipment of live stock under a

contract requiring such claim to be filed within thirty days after their arrival at destination, which sufficiently identified the shipment, was not invalid because "1907" instead of "1913" was written therein as the date of the shipment. (Page 64.)

3. CARRIERS—LIVE STOCK—CLAIM FOR DAMAGES—WAIVER. In a shipper's action for damages to a shipment of live sotck, carrier's claim agent, who received the claim and considered it on its merits, did not waive the presentation of a valid claim. (Page 64.)

4. APPEAL AND ERROR—HARMLESS ERROR—SUBMISSION OF ISSUE. Error in submitting to the jury the question whether a shipper's claim for damages to live stock complied with the shipping contract was harmless, where the jury found that the claim did comply with the contract. (Page 64.)

5. CARRIERS—LIVE STOCK—LIMITATION OF LIABILITY—REASONABLENESS. A provision, in a contract for the shipment of live stock in consideration of a reduced rate, that in order that any claim of damages might be investigated the shipper, as a condition precedent to his right to damage for injury in transit, or from delay, or from a decline in the market due to such delay, would, upon final delivery on the carrier's line, give a written notice of such damage to its station agent before the stock should be removed from the place of delivery and should not remove it for three hours thereafter, and that if final delivery was beyond the carrier's line, such written notice should be given to the agent at the carrier's station last reached by the shipment before delivery to a connecting carrier, was unreasonable and unenforceable. (Page 65).

6. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE. In an action for damages to a shipment of live stock, the admission of market reports, giving the current prices for live stock, though they also gave the amount of sales and prices paid therefor, was not prejudicial. (Page 68.)

7. EVIDENCE—HEARSAY—ACCOUNT OF SALES. In an action for injury to a shipment of live stock, the account of sales rendered to the shipper by a commission merchant, showing the number of lambs and sheep sold, their weight and price per hundredweight, as prepared from weights ascertained by a weighmaster, in the absence of testimony of any one who saw the weighing or had knowledge thereof, or testimony that the weights were correct, was hearsay, and inadmissible.[1] (Page 68.)

8. APPEAL AND ERROR—HARMLESS ERROR—ADMISSION OF EVIDENCE.

[1]*Shepherd* v. *D. & R. G. Co.*, 45 Utah 295, 145 Pac. 296.

Where a case is tried to the jury, the admission of incompetent evidence to establish a material fact as to which the evidence is conflicting is ordinarily reversible error, but where there is abundant competent evidence to establish the fact sought to be proved by such incompetent evidence, its admission is not error. (Page 69.)

Appeal from District Court, Third District; Hon. *A. B. Morgan,* Judge.

Action by James R. Baird against the Denver & Rio Grande Railroad Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Van Cott, Allison & Riter* for appellant.

*Weber & Olson* for respondent.

FRICK, J.

This is an action for damages which plaintiff alleges he sustained by reason of defendant's negligence in unnecessarily and unreasonably delaying transportation of his lambs and sheep from Heber City, Utah, to Kansas City, Mo. All the lambs and sheep in question were transported on the same train, but inasmuch as they did not all belong to the plaintiff he sues as assignee upon one of the causes of action set forth in the complaint. In the first cause of action plaintiff, in substance, alleged that in September, 1913, he delivered to and the defendant received from him at Heber City, Utah, 1,078 head of lambs and sheep, which it agreed to transport to Kansas City, Mo., to Clay, Robinson & Co., the assignees; that the defendant so negligently transported said lambs and sheep that the same were delayed for more than twenty-four hours en route between said Heber City and their destination, by reason of which said lambs and sheep shrank in weight two pounds per head in excess of what the normal shrinkage would have been if they had been transported with reasonable diligence and dispatch; that by reason of said delay said

lambs and sheep were delivered at their destination twenty-four hours later than they should have been, and that by reason of the decline of the market price of said lambs and sheep plaintiff lost twenty-five cents per hundredweight, and that by reason of said delay plaintiff was also required to incur extra expense in procuring food and in feeding said lambs and sheep while in transit; that by reason of all of which plaintiff was damaged in the sum of $154.25 on account of excess shrinkage, $332.49 on account of the decline in price, and $7.60 for the purchase of additional food. The matters constituting the defendant's negligence were fully set forth in the complaint. The second cause of action was practically a repetition of the first one, except that there were 2,000 lambs on which the alleged loss from excessive shrinkage was alleged to have been $288.41, the loss by reason of the decline in the market price, $335.78, and for extra expense and food, $10.30. It was also alleged that the second cause of action was assigned to the plaintiff by one Phillips. The defendant in its answer denied the alleged negligence, pleaded negligence on the part of the plaintiff in caring for said lambs and sheep while in transit which caused said alleged excessive shrinkage, and also set forth the contract of shipment as a defense, to which we shall hereafter refer more in detail. A trial to a jury resulted in a verdict for the plaintiff on the first cause of action for the sum of $186.41, and on the second for the sum of $409.91. Judgment was duly entered on the verdict and the defendant appeals.

The defendant procured the shipping contract, under which the lambs and sheep in question were received and transported by it, in evidence, and the portions upon which it more particularly relies are as follows:

"Said company agrees to transport for said shipper over its lines only from its said station at Heber, Utah, to its said station at Pueblo, Colorado, four cars * * * of sheep consigned to Clay, Robinson & Co., Kansas City, Missouri, at its limited liability rate as shown by its published tariffs."

Further that:

"The rate given under this contract is based on a limited liability and is thirty-three and one-third (33 1-3) per cent.

less than regular tariff rates where shipment is made at the company's risk.''

It was further provided that:

''In the event of loss or damage from any cause for which the company may be liable, claim shall not and will not be made for any amount in· excess of the actual value at the time and place of shipment of animals destroyed, damaged or lost, nor in any event in excess of  *  *  *  three dollars per head.''

Another provision specially relied on reads as follows:

''10.  That, in order that any loss or damage to be claimed by the shipper may be fully and fairly investigated and evidence thereof preserved, said shipper agrees that as a condition precedent to his right to recover any damages for loss or death of or injury to said stock during transportation, or at any place where the same may be loaded or unloaded, or any damage caused by delay or otherwise, in the transportation thereof, or damage to said shipper caused by decline in market taking place during delay in transportation, or by reason of loss of contract of sale due to such delay, the shipper, or his agent in charge of the stock, when final delivery is made on the company's lines, shall and will give notice in writing of such loss or damage to some officer of the company or to the station agent of the company at the station nearest to the place where said stock is delivered, before such stock shall have been removed from the place of delivery and before such stock shall have been slaughtered or commingled with other stock, and said shipper further agrees that he will not remove said stock from the place of delivery until the expiration of three (3) hours from the service of notice aforesaid; and where final delivery of said stock by the company shall not be made on the company's lines to the shipper or consignee, but to a connecting carrier, such written notice of loss or damage as aforesaid shall be given to some officer of the company or to the station agent at the last station on the company's lines reached by the shipment and before such shipment is removed from the station where delivery is made to such connecting carrier.  No claim for any damages, or for loss or death of or injury to the live stock covered by this contract,

however occurring, or for damage to said shipper, caused by decline in market taking place during delay in transportation, or by reason of loss of contract of sale due to such delay, shall be allowed or recovered, unless written claim therefor shall be presented to the freight claim agent of the company at Denver, Colorado, within thirty (30) days after the shipment shall have reached final destination. A failure to comply in every respect with the terms of this section shall be a complete bar to any recovery of any and all damages, and none of the provisions or conditions of this section shall be waived except by a general officer of the company, and by him only in writing."

It was also shown that the negligent acts complained of, and which caused the delay, occurred on defendant's railroad between Tennessee Pass and Pueblo Station, Colo.; that the lambs and sheep were transferred by the defendant to the Missouri Pacific Railroad Company at Pueblo, Colo., and that said company transported them to Kansas City, Mo., where by reason of the delay between the stations aforesaid, the sheep arrived twenty-four hours later than they should have done. It was also shown without dispute that the plaintiff did not comply with the provisions of the shipping contract, in that he did not serve the notice therein provided for before the lambs and sheep were transferred to the Missouri Pacific Railroad Company at Pueblo, Colo., and that he did not serve such notice on any one at any time or at any place. The plaintiff did, however, file a claim for damages within the thirty-day period provided for in the contract of shipment, but the defendant insisted at the trial, and now insists, that the claim as presented was insufficient for the reason that in giving the date of the shipment the year 1907 was given, instead of 1913, the year when the shipment was actually made. It was also made to appear that the lambs and sheep were all sold at a price in excess of three dollars per head. When the plaintiff rested the defendant interposed a motion for a nonsuit in which it, among other things, is contended that the plaintiff was not entitled to recover for the reasons: (1) Because he did not serve the notice required by the contract of shipment, (2) because he had not presented his claim within

the time provided in said contract, and (3) because he had realized more than three dollars per head for all of the lambs and sheep involved in this case, and for that reason he cannot recover anything from the defendant in view of the valuation clause we have hereinbefore set forth. The district court overruled the motion. At the close of all the evidence defendant's counsel also moved for a directed verdict, which motion was denied. Counsel now insist that the rulings constituted prejudicial error.

We will consider the foregoing grounds of the motion for a nonsuit in the inverse order in which they are stated above.

We can perceive no good reason for sustaining the third ground stated above. The claim made by the plaintiff is not in excess of the amount or value stated in the contract of shipment, but in fact is much less. Indeed, the plaintiff claimed only a small fraction of the amount stated in the contract of shipment. Defendant's counsel have **1** referred us to no case wherein it was held that the carrier is not liable for the actual damages, provided the amount claimed per head is less than the valuation limited in the contract of shipment. All that is decided in the cases to which we are referred (*Missouri, K. & T. Co.* v. *Harriman,* 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, and *Cleveland, etc., Ry. Co.* v. *Dettlebach,* 239 U. S. 588, 36 Sup. Ct. 177, 60 L. Ed. 453) is that, where the shipper elects to ship at the reduced rate and agrees to a particular valuation, he is bound by such valuation, and in case of loss or damage he cannot recover in excess of the agreed value. As we construe the valuation clause in the shipping contract in question, the effect of the ruling of the district court is not contrary to said clause nor against the rulings in the cases referred to above, and therefore is not erroneous.

Nor do we think there is merit in the contention that the plaintiff cannot recover for the reason that he failed to present his claim within thirty days after the shipment **2, 3, 4** reached its final destination. The evidence shows that a written claim was mailed to the proper officer of the defendant at Denver, Colo., within eight days after the shipment had reached its final destination. In copying the claim, however,

the typist, in writing the year, wrote "1907" instead of "1913," as the year in which the shipment was made. The statements in the claim itself were, however, sufficient to identify the shipment and the claim agent of the defendant so regarded the matter, since he did not refuse to consider the claim upon the ground now urged by counsel, but considered it upon its merits and finally rejected it for the reason that it was without merit. We do not think the facts in this case present a case of waiver as contended by the defendant. The claim agent of the defendant did not waive the presentation of a claim, but the most that he did was to receive and consider a ʼclaim which contained a clerical error, and for that reason was defective, which defect in no way affected the substance of the claim. We think the claim as presented was a substantial compliance with the requirements of the shipping contract, and was therefore sufficient. The court, however, submitted the facts to the jury, and they found that a claim in writing had been duly presented within the time required in the shipping contract. In our opinion the only error the court committed was in the submission of the question to the jury. The facts were not disputed, and the court should have declared as matter of law that the claim was timely presented, and that it was sufficient in both form and substance. In view, however, that the jury found in accordance with what the court should have declared as a matter of law, the defendant was not prejudiced.

This brings us to the first ground stated above. In support of that ground defendant's counsel have cited and relied upon the following, among other, cases where similar provisions of shipping contracts were considered and upheld, namely: *Clegg* v. *St. Louis & S. F. R. Co.* (1913), 203 Fed. 971, 122 C. C. A. 273; *Kidwell* v. *Oregon S. L. Ry. Co.* (1913), 208 Fed. 1, 125 C. C. A. 313; *McElvain* v. *St. Louis & S. F. R. Co.* (1913), 176 Mo. App. 379, 158 S. W. 464; *Henry* v. *Chicago, M. & P. S. Ry. Co.* (1915), 84 Wash. 633, 147 Pac. 425; *St. Louis & S. F. R. Co.* v. *Zickafoose* (1913), 39 Okla. 302, 135 Pac. 406; *Armstrong* v. *Illinois C. Ry. Co.* (1915), 162 Ky. 539, 172 S. W. 947; *Dunlap* v. *Chicago & A. Ry. Co.* (1915), 187 Mo. App. 201, 172 S. W.

1178; *Atchison, T. & S. F. Ry. Co.* v. *Baldwin* (1911), 53 Colo.
416, 128 Pac. 449; *Chicago, R. I. & P. Ry. Co.* v. *Conway*
(1912), 34 Okla. 356, 125 Pac. 1110; *Northern P. Ry. Co.* v.
*Wall, Adm'r.* (1916), 241 U. S. 87, 36 Sup. Ct. 493, 60 L.
Ed. 905. The stipulations in the shipping contract regard-
ing the giving of the notice under consideration in all of the
foregoing cases are distinguishable from the stipulation con-
tained in the shipping contract in this case, for the reason
that in all of those cases, except the last one cited, the stipula-
tions required the giving of the notice after the shipment had
reached its final destination, and in the last case the Supreme
Court of the United States held that such was the meaning of
the stipulation in the contract there under consideration, and
hence even that case is not an exception. In the case at bar,
however, the complaint is not (and under the terms of the
shipping contract could not well be) that the notice was not
served after the shipment had reached its final destination,
and before unloading and commingling the sheep, but the com-
plaint is that the notice was not served at Pueblo, Colo., the
end or terminus of its line of railroad, where the shipment
had arrived on the evening of the 12th of September and
where, on that day, it was transferred to the Missouri Pa-
cific Railroad, and finally reached its destination on the morn-
ing of the 16th of September, several days after it had reached
the end of defendant's railroad. It will be observed that the
stipulation in the shipping contract in question required the
plaintiff to serve notice regarding all of his claims for dam-
ages, including shrinkage and loss by reason of a decline, if
any, in the market price of the sheep. That was, however,
also the case in all of the shipping contracts passed on in
the cases we have cited, and in those cases the claims were
for shrinkage and decline of the market price, just the same
as here. As already stated, however, in those cases the no-
tices were required to be served after the shipment had
reached its final destination, and at a time and place where
and when it was possible for the claimants to indicate what
their losses or damages were. It seems to us there is a ma-
terial and a very substantial difference between requiring such
notice after the shipment has reached its final destination and

in requiring it while the shipment is still in transit, and several days must elapse before the final destination is reached. True the delay complained of occurred on appellant's line of railroad; but the consequences of the delay, which is the material thing, were not, and could not have been, known until after the shipment had reached its final destination. The evidence is uncontradicted that the greatest shrinkage in transporting lambs and sheep ordinarily occurs during the latter part of the journey. That evidence, however, only confirms the common experience of all men, since the longer live stock is exposed to the somewhat severe treatment incident to a long journey on railroad cars the more will it be affected by reason of insufficient rest if for no other cause. How, then, can it be said to be a reasonable requirement that a shipper shall serve notice that he has suffered loss by reason of abnormal shrinkage while the live stock is still in transit and several days before it has reached its destination? He might just as well be required to serve notice just as soon as his train is delayed for any cause, at any place, and at any time, however short the delay might be, and however distant from the ultimate point of destination. It seems to us that, in order to make such a requirement valid and enforceable, it must be based upon reason, and must give the shipper a fair and reasonable opportunity to state the causes and probable amount of his loss or damages. Moreover, how can a shipper make a claim for a loss which is produced by a decline of the market price when such decline, as it is made to appear here, occurs several days after the shipment has been transferred from the initial to the connecting carrier? One can understand how such a fact, if it exists, can become known as soon as the shipper arrives at his destination, but one cannot conceive how that fact can be known several days in advance of that time and before it occurs. The evidence shows that if the shipment had reached its destination in the usual and ordinary course of time, there would have been no decline in the market price, and that the decline occurred on the morning on which the lambs and sheep arrived at their destination, and before they could be placed on the market. If in this case the stipulation in the shipping contract had required the serv-

ice of notice after the shipment had reached its final destination, the cases cited above would be decisive of the question. That is, however, not what is required, but the requirement is that the shipper serve notice while his stock is still in transit and before he could know what the consequences of the alleged negligent delay might be. In view of the matters just stated, we feel constrained to sustain the ruling of the district court that the requirement to serve the notice in the shipping contract in question is unreasonable and unenforceable. In view of the decisions hereinbefore referred to, we have arrived at the foregoing conclusion with some hesitation and only after much reflection. We, however, feel amply justified, both by reason of the distinctions we have pointed out, which, to our minds, are substantial and material, and because the question is one whose ultimate determination and solution belongs to the federal courts. If, therefore, we are in error, the defendant has a plain, speedy, and adequate remedy by prosecuting error to the Supreme Court of the United States, while if we hold otherwise, and our holding should ultimately be found to have been erroneous, the plaintiff would be without remedy.

The other grounds of the motion for nonsuit do not require further discussion. The foregoing also disposes of the request for a directed verdict.

It is further contended that the court erred in admitting in evidence certain market reports giving the current prices for live stock and the amount of sales and the **6** pices paid therefor. Counsel do not object to the introduction of the report so far as it merely showed the market price, but they contend that other matters were. also admitted with and included in the reports. Even if it were conceded that there were some things included in the market reports outside of the ruling prices on the dates mentioned therein, yet such matters were harmless, and could not have prejudiced any of defendant's substantial rights.

It is further contended that the court erred in admitting in evidence the account of sales rendered to the plaintiff by Clay, Robinson & Co., commission merchants, who **7** sold the lambs and sheep in question. The account of sales in question showed the number of lambs and sheep

sold, their weight, the price per hundredweight, and the total amount for which they were sold, and to whom sold. It was made to appear that the lambs and sheep in question were weighed by a weighmaster, but who he was is not shown; that Clay, Robinson & Co. prepared the account of sales from the weights thus ascertained, but no witness was produced who saw the lambs and sheep weighed, or otherwise had knowledge of the facts, or who testified that the weights stated in the account of sales were the correct weights. There was no preliminary proof, except the testimony of the plaintiff that the account of sales was furnished and delivered to him by Clay, Robinson & Co. Plaintiff's counsel defend the court's ruling upon the theory that the account of sales in question was made in due course of business, and that it is in the nature of a public document. The document clearly was not a public document. It was made in due course of business, let it be conceded, but the proper preliminary proof, for various reasons, was not made to let it in under that exception to the hearsay rule. Nor does the memorandum take the place of original entries in books of account, and of course it cannot be considered as a public document. No doubt the person who weighed the sheep, or any person who saw them weighed, and knew that the weights were correctly recorded at the time, could have used the account of sales to aid his testimony; but there was no such preliminary proof. The account of sales in question, standing alone, is not an exception to the hearsay rule, and cannot be used as independent and primary evidence to prove the facts therein recited. To that effect are the authorities. *Ft. Worth & R. G. Ry. Co.* v. *Cauble,* 41 Tex. Civ. App. 348, 91 S. W. 244; *International & G. N. R. Co.* v. *Startz,* 97 Tex. 167, 77 S. W. 1; *Texas & P. Ry. Co.* v. *W. Scott & Co.* (Tex. Civ. App.), 86 S. W. 1065. Nor is there anything to the contrary in the case of *Shepherd* v. *D. & R. G. Co.,* 45 Utah 295, 145 Pac. 296, referred to by respondent's counsel.

In view of the state of the evidence the court erred in admitting the account of sales. Where a case is tried to a jury and improper or incompetent evidence is admitted to establish a material fact, respecting which the

evidence is in conflict, the admission of such evidence ordinarily constitutes reversible error. There are, however, conditions under which the admission of improper evidence, even where a case is tried to a jury, may not constitute prejudicial error. Such may be the case where there is abundant competent evidence to establish the fact which is also sought to be proved by improper evidence, and where there is no evidence to the contrary. Such is the condition here. There is abundant competent evidence in the record showing the weight of the lambs and sheep in question and the amount received therefor. There is also an abundance of competent evidence showing the excessive shrinkage of the lambs and sheep, the amount thereof, and the decline of the market price from the day preceding to the day on which the lambs and sheep reached the market at Kansas City. All the necessary elements were therefore established by competent and proper evidence, and in view that there was no evidence to the contrary the jury had no alternative save to find the fact in accordance with the undisputed evidence. The error was therefore not prejudicial to any of the defendant's substantial rights, and for these reasons this assignment cannot prevail.

What we have already said also disposes of the exceptions to the instructions given by the court which were excepted to, and to the request which was refused. There are one or two other assignments, but they are not of sufficient importance to require special treatment.

For the reasons stated, the judgment is affirmed, with costs to respondent.

STRAUP, C. J., and McCARTY, J., concur.