## ARGEROS v. STATE

(No. 1118; Decided February 27, 1923; 212 Pac. 766)

CRIMINAL LAW—EVIDENCE—HEARSAY—CORPUS DELICTI—VENUE OF
. CRIME—PROOF OF DE FACTO CORPORATION.

1. On the trial of a defendant charged with larceny of sheep
   from a shipment in transit, testimony of a witness as to
   the contents of a sales account, rendered to the shipper
   by a commission firm that handled the shipment at desti-
   nation, the correctness of which account the witness was
   without knowledge, was mere hearsay, and incompetent to
   prove a shortage in the shipment.

2. In order that the admission of incompetent evidence may be
   held to be harmless, other evidence in the case on the same
   point must be clear.

3. Upon an issue as to the existence of a corporation named
   as the owner of property alleged in a criminal informa-
   tion to have been stolen, it is only necessary to prove that
   the corporation was such de facto, and this may be proved
   by reputation.

4. On the trial of one accused of the larceny of sheep from
   a railroad company while in transit, testimony by a sheriff
   of complaints made to him by officials of the railroad
   company concerning suspected thefts from its yards or
   premises, held immaterial and incompetent to prove any
   issue in the case.

5. In a larceny case testimony by witness that on or about
   date of the alleged larceny he had seen defendant take
   sheep to pens owned by witnsess' employer and that his
   employer had kept no sheep in said pens during the spring
   and summer of that year nor immediately preceding the
   date of the alleged larceny, was competent as a circum-
   stance to be considered by the jury in its determination of
   the question of guilt.

APPEAL from the District Court, Platte County; HON.
WM. A. RINER, Judge.

Peter Argeros was convicted of the crime of larceny and
appeals.

*Kinkead, Ellery* and *Henderson,* for appellant.

The testimony of the witness Brome was hearsay, incompe-
tent, irrelevant and immaterial and should have been exclud-

ed; he testified from a memorandum supplied by a bank, the correctness of which he had no personal knowledge; if the memorandum had been authenticated it alone would have been the best evidence; it devolved upon the state to prove the charge by the best evidence. (Jones Ev. 199 P. P. 243.) Deductions and conclusions of the witness Brome from his examination of the memorandum were inadmissible (22 C. J. 207.)    (Baird v. Company, 162 Pac. 79.)    The state rested its case on venue and *corpus delicti,* upon Brome's testimony; (Ex Parte Millsap, 118 Pac. 135.) the defendant was denied the right of being confronted with the witnesses testifying against him by the admission of hearsay evidence from the witness Brome; (Jones Ev. 297 P. P. 374.) defendant's motion to strike the same should have been sustained; (10 R. C. L. 133; Lambert v. Hamlin, 6 Ann. Cas. 713-714; State v. Osborn, 20 Ann Cas. 627-631;) the state failed to prove the venue and *corpus delicti* as laid in the information, the most that was proven by Brome's testimony was a shortage in a shipment of sheep at Denver, Colorado; this proof falls short of proving larceny in Platte County; (Green v. State, 122 Pac. 1108; State v. Millmeirer, 72 N. W. 275.) the information charged ownership of the sheep in the Chicago, Burlington and Quincy Railroad Company, a corporation; the corporate character of this company was not proven; the state offered as evidence a certified copy of the corporate certificate of the Chicago, Burlington and Quincy Railroad Company, the certificate introduced was not authenticated as required by Section 906 R. S. U. S. and was not proof that the corporation described in the information was a *de jure* or a *de facto* corporation; (Tollifson v. People, 112 Pac. 794-796; State v. Winder, 46 Atl. 1046; Webb v. State, 131 Pac. 970; People v. Berger, 102 N. E. 751;) the objections to the certificate in question should have been sustained; it was a copy of a certificate from a sister state but not authenticated and, therefore inadmissible; (Milwaukee Gold v. Gordon, 95 Pac. 995; Parchen v. Peck, 2 Mont. 567; James v. James,

77 Pac. 1080; Wilcox v. Bergman, 104 N. W. 955; Chapman v. Chapman, 104 N. W. 880; Newson v. Langford, 174 S. W. 1036 (Texas); Petermans v. Law, 6 Leigh, 523 (Va.); Nolan v. Nolan, 54 N. Y. S. 975; McCormick v. Evans, 33 Ill. 327; Taylor v. McKee, 45 S. E. 627 (Ga.); Johnson v. Rannels, 6 Mart. (N. S.) 621 (La.); Hollister v. Armstrong, 5 Houst. 46 (Del.); Arndt v. Burghardt, 162 N. W. 317 (Wis.); Ledowsky v. Gordon, 194 Ill. App. 442; Insurance Co. v. Stevens, 71 Fed. 258; Smith v. Brackett, 38 Atl. 57; Adams v. Stenehjem, 146 Pac. 467 (Mont.); Halfhill v. Malick, 120 N. W. 1086-1092 (Wis.).) the testimony of witness Morgneous that Krionderis kept no sheep on his ranch in the spring and summer of 1921 was immaterial and should have been excluded. The testimony of the witness Payne, sheriff of Platte County with reference to losses of sheep from railroad stock yards at Guernsey was hearsay and incompetent; and the court also erred in permitting the witness Payne to testify as to the means he took to locate the alleged lost sheep; the verdict is not sustained by sufficient evidence and defendant's motion for a directed verdict should have been sustained.

*W. L. Walls,* for respondent.

No exceptions were reserved by defendant to the evidence offered by the state with the exception of questions No. 182½, 194, 277 and 763. Error was assigned by defendant to rulings of the court upon questions 182½, 194 and 277, but these assignments were abandoned in defendant's brief; the objection to question 763 was untimely. Defendant failed when called as a witness to deny the charge and the evidence offered thereunder and such failure was an implied admission of its truth; (State v. Dexter, 87 N. W. 417; People v. Amaya, 134 Cal. 531; 66 Pac. 794; People v. Kessler, 13 Utah 69; 44 Pac. 97-101; Bob v. State, 32 Ala. 560; Gale v. Lincoln, 11 Vt. 152;) defendant by failing when a witness to deny the testimony of the prosecution given against him admits its truth; (State v. Goods, 33 S. W. 790; State v.

Taylor, 35 S. W. 92; State v. Paxton, 29 S. W. 705; State v. Musick, 14 S. W. 212; Com. v. Finnerty, 19 N. E. 215; State v. Callahan, 69 A. 957; 73 A. 235; Stover v. People, 56 N. Y. 315; Davis v. State, 15 Tex. App. 594.) he cannot complain that the evidence is insufficient, where he himself has supplied the deficiency; (State v. Potello, 119 Pac. 1023.) incompetent evidence offered by the state and admitted by defendant is not prejudicial error; (Motes v. United States, 178 U. S. 458; Blackwell v. United States, 236 Fed. 912; McDuffie v. State, 86 S. E. 821; State v. Byrd, 41 Mont. 585; State v. Miller, 115 N. W. 493.) the jury was justified in drawing the inference that defendant could not truthfully deny the facts bearing upon the question of his guilt or innocence, after he went upon the witness stand and failed to deny that he committed the crime or had any participation in it; (State v. Skillman, 70 Atl. 83-87; State v. Hillstrom, 150 Pac. 935) a conviction is not contrary to law where there is credible evidence to support it; (Ford v. State, 78 S. E. 782; State v. Draughn, 124 S. W. 20; U. S. v. Green, 220 Fed. 973; U. S. v. Wilson, 176 Fed. 806.) a question must be objected to as soon as it is propounded and objections made after the evidence is in are unavailing; (People v. Scalameiro, 143 Cal. 343, 76 Pac. 1096; Lewis v. State, 25 So. 1017; McLeroy v. State, 25 So. 247; Vickery v. McCormick, 20 N. E. 495; State v. McKimtry, 100 Ia. 82, 69 N. W. 267; State v. Cater, 69 N. W. 881; State v. Moore, 25 Ia. 128; State v. Benge, 61 Ia. 658, 17 N. W. 100; Ryan v. State, 36 Atl. 706; State v. Fitzgerald, 47 Atl. 403.) it was proven by the witness Morgenous that defendant attempted to bribe and intimidate him; in testing the sufficiency of evidence to sustain a conviction the appellate court will accept the testimony of the prosecution as true, and need only consider such evidence, and will presume that conflicts in the evidence was resolved by the jury in favor of the prosecution's witnesses; (Starnes v. State, 128 Ark. 302, 194 S. E. 506; McCown v. State, 188 S. W. 547; State v. Taylor, 159 N. C. 465, 74 S. E. 914; State v.

Chevigny, 48 Mont. 382, 138 Pac. 257.) proof that the lambs stolen were in the possession of the Chicago, Burlington and Quincy Railroad Company as bailee was sufficient, without proving what the company is; (State v. Watson, 102 Ia. 651, 72 N. W. 283; Thalheim v. State, 20 So. 947; Duncan v. State, 29 Fla. 439, 10 So. 815.) it was not necessary to produce the charter of the company; (State v. Grant, 104 N. C. 908, 10 S. E. 554; State v. Collens, 37 La. Ann. 607; Reed v. State, 15 Ohio 217; Smith v. State, 28 Ind. 322; People v. Davis, 21 Wend. 309; Burke v. State, 34 O. S. 79.) proof that the company was a corporation *de facto* was sufficient; (People v. Barrick, 49 Cal. 342.) refusal to direct a verdict for the defendant was not erroneous; if there was not sufficient evidence to sustain the conviction at the close of the state's case defendant supplied the omission; where accused where testifying in his own behalf, established the commission of an offense, whether there was sufficient proof of the *corpus delicti* at the conclusion of the state's case was immaterial. (In re Kelley, 83 Pac. 225; Kaye v. U. S., 177 Fed. 147; Messel v. State, 95 N. E. 565.)

*Kinkead, Ellery* and *Henderson*, in reply.

The prosecution contends that after eliminating evidence erroneously admitted, there is still sufficient evidence to sustain the verdict; it concedes that Brome's evidence was hearsay; the erroneous admission of evidence calls for a reversal; (17 C. J. 319; People v. Jordan, 127 N. E. 117; State v. Aldrick, 166 Pac. 1130; State v. Leltan, 139 N. W. 475; State v. Diedtman, 190 Pac. 117; Martin v. State, 89 So. 845; State v. Harrison, 88 So. 696; People v. Todaro, 120 N. E. 135; People v. Hedge, 120 N. E. 494; Alvarez v. State, 78 So. 272; People v. Whittlock, 171 N. Y. S. 109; State v. Vaughan, 173 N. W. 1917; Callahan v. U. S. 240 Fed. 683.) as to the proof required to establish the existence of the Burlington Railroad Company as a *de facto* corporation we submit that a mere assumption of a corporation name will not constitute a *de facto* corporation; there must be at

least an attempt to perfect the organization under the law; (Fletcher on Corporations, Vol. 1 289; Farmers Co. v. Reser, 88 N. E. 349.) there was no proof whatever to establish the existence of the railroad company as a *de facto* corporation; no inference or presumption can be drawn from the failure of the defendant to take the stand and testify; the prosecution erroneously assumes that an offense was proved in some degrees at least, then proceeds to argue that defendant's failure to deny the commission of the offense, establishes the guilt of defendant and supports the verdict; we say that a lack of evidence cannot be properly considered as a factor supporting a verdict. (People v. Jordan, 127 N. E. 117.)

BLUME, Justice.

The appellant Peter Argeros was charged with the larceny of 25 head of sheep, the property of the Chicago, Burlington & Quincy Railroad Company, a corporation, who held said property as bailee. He was convicted of the charge. From the judgment entered thereon he brings this case here by direct appeal.

1. To establish the *corpus delicti* the state introduced as a witness one Charles L. Brome, the owner of the sheep, who shipped them from Worland to Denver, via the Burlington railroad, billed to Seigle & Campion, commission merchants. On direct examination he testified that 25 lambs were missing out of the shipment at Denver. On cross-examination it developed that he had no personal knowledge of that fact, and that the only information he had on the subject was derived from the returns of sales of the shipment made by Seigle & Campion, which returns, as the later testimony showed, were, together with a check, sent to a bank at Worland, Wyoming. Defendant moved that the testimony of the witness as to the shortage be stricken out. This motion was overruled, an exception was taken, and this action of the court is assigned as error here. No witness was produced who saw the sheep at Denver or knew

anything about the shortage. Not even the original books
of Seigle and Campion, showing the sale of the sheep, or the
transaction in connection therewith, were introduced in ev-
idence or attempted to be introduced. The testimony of the
witness Brome was clearly hearsay. He knew nothing about
the shortage; he did not know whether the facts contained
in the account of sales were correct. It has been held that
not even this account could be used as independent and pri-
mary evidence to prove the facts therein recited. (Baird v.
Denver & R. G. R. Co., 49 Utah 58, 162 Pac. 79; Ft. Worth
& R. G. R'y. Co. v. Couble, 41 Tex. Civ. App. 348, 91 S.
W. 244; International & G. N. R. Co. v. Starts, 97 Tex. 167,
77 S. W. 1; Texas & P. R'y. Co. v. W. Scott & Co., (Tex.
Civ. App.) 86 S. W. 1065.) In the case of Board v. Den-
ver & R. G. R. Co., supra, the court said:

"Plaintiff's counsel defend the court's ruling upon the
theory that the account of sales in question was made in
the due course of business, and that it is in the nature of a
public document. The document clearly was not a public
document. It was made in due course of business, let it be
conceded, but the proper preliminary proof, for various
reasons, was not made to let it in under that exception to
the hearsay rule. Nor does the memorandum take the place
of original entries in books of account, and of course it can-
not be considered as a public document. No doubt the per-
son who weighed the sheep, or any person who saw them
weighed and knew that the weights were correctly recorded
at the time, could have used the account of sales to aid his
testimony; but there was no such preliminary proof. The
account of sales in question, standing alone, is not an excep-
tion to the hearsay rule, and cannot be used as independent
and primary evidence to prove the facts therein recited."

It must be even clearer that the testimony of the witness
Brome was hearsay, based as it was upon facts mentioned in
the account of sales, when he knew nothing about these facts
or the correctness of the account. Clearly we cannot estab-
lish a rule under which a fact, especially one of importance,

may be established by a witness who gains his knowledge thereof solely from a letter or a statement received from a third party.   Hence the testimony referred to, as well as similar testimony given by the same witness when he was recalled, should have been stricken upon motion, when the objection that it was hearsay testimony was raised.

The subject is of particular importance because the witness Brome is the main witness in the case by which the shortage of sheep was attempted to be established.   Whatever other testimony appears in the record tending to show that fact is, without attempting to pass upon the weight thereof, and without attempting to go into the details thereof, at least not of convincing character on the point in question.   There was no direct testimony showing any shortage at Guernsey.   There was evidence that the sheep in the goat pen of Krionderis, hauled there by the defendant, had a brand like that of the sheep of the witness Brome, but no attempt was made to show that the sheep of Brome alone had this brand, and it is not clear that the sheep in the goat pen might not have been acquired from a source other than that contended by the state.   In order that the admission of incompetent evidence may be held to be harmless, the other evidence in the case on the same point must be clear· (4 C. J. 973, 977 ; 17 C. J. 319, 332,) which is not true in the case at bar.   The jury were undoubtedly influenced by the testimony in question in determining as to whether an actual shortage in the number of sheep existed or not, and hence the case must be reversed on account of the error pointed out.

2.   In view of the further trial of the case we shall briefly touch upon the remaining points argued.   Articles of incorporation of the Chicago, Burlington & Quincy Railway Company, certified to by the secretary of the state of Iowa, and recorded in Platte County, Wyoming, were introduced in evidence.   We need not stop to consider whether the certification, in order to admit the document in evidence, was proper, or whether the articles of incorporation were those

of a company different from that mentioned in the information. The admission of the document could not in any event be held to be prejudicial. Without deciding as to whether or not the remaining evidence in the record is sufficient to show the Chicago, Burlington & Quincy Railroad Company to have been a corporation, as alleged in the information, all we need to say here is that it is only necessary to prove that the corporation was such *de facto,* and this may be proved by reputation. (Tollifson v. People, 49 Colo. 219, 112 Pac. 794; Reed v. State, 15 Ohio 217; Miller v. People, 21 Colo. 166, 21 Pac. 1025; Perry v. People, 13 Colo. 23, 87 Pac. 796; People v. Barric, 49 Cal. 342.)

3.   The sheriff of Platte County was produced as a witness by the state and he was asked concerning complaints made to him by the officials of the railroad company, and he testified at length in regard thereto. Questions of this kind would, no doubt, at times be proper as preliminary, if followed up by testimony showing that pursuant to the complaint discovery was made of facts throwing light on the transaction. It would seem, however, that there was no such purpose in the case at bar. Here the testimony was elicited apparently for the sole purpose of showing that such complaint was actually made. In order that testimony may be admissible, it should tend to prove an issue in the case. The testimony in question had a tendency to show that the railroad company suspected that the crime had been committed in Platte County, and possibly, that the defendant was connected with it, but nothing more, and hence the testimony was wholly immaterial, and was incompetent to prove any issue. We do not, however, determine as to whether or not it was prejudicial to the defendant.

4.   The witness Morgenaus testified that on the night of November 13, 1921, he saw the defendant take sheep to the goat pens of one Krionderis; that he saw these sheep in the pens soon after that date; that he worked for Krionderis in the spring and summer of 1921 and that no sheep were in the pens at that time. It is objected that the testimony as

to whether Krionderis had sheep in the spring and summer of 1921 was improperly admitted. We think not. While the time testified to was somewhat remote, that did not effect the competency of the testimony at the time it was offered, and if followed up, as it was in this case, that Krionderis had no sheep immediately preceding November 13, '921, might have weight in the minds of the jury in determining the question of the guilt of the defendant.

For the error herein pointed out, the judgment of the lower court is reversed and the case is remanded for a new trial.

*Reversed and Remanded.*

POTTER, Ch. J., and KIMBALL, J., concur.